The Board of Commissioners of Tippecanoe County *v.* Mitchell.

No. 13,979.

## THE BOARD OF COMMISSIONERS OF TIPPECANOE COUNTY *v.* MITCHELL.

PUBLIC OFFICER.—*Right to make Contracts with Ministerial Officers.*—Officers controlling the affairs of a public corporation may contract with ministerial officers of the corporation, unless such contracts are prohibited by statute.

COUNTY COMMISSIONERS.—*Allowances by.*—Construing the acts of 1879 and 1883 together, concerning allowances by boards of county commissioners, the plain conclusion required is that where there is an "indispensable public necessity" there is authority of law for making a contract with a county officer.

SAME.—*Review of Decision.—How Effected.*—In order to review the decision of a board of county commissioners as to the existence of an "indispensable public necessity," there must be a pleading properly alleging facts showing that the finding of the existence of a public necessity was wrong.

SAME.—*Contract with Officer of County.— Validity of.*—Where a board of county commissioners contracted with the county clerk at a stipulated price (the record showing "an indispensable necessity" for so doing) to index and re-arrange certain papers and files in his office, he may recover against the county on the contract. The claim is not for extra compensation, nor for official services nor for added official duties, but solely and exclusively for compensation due under a special contract, which the board had the same right to make with the county clerk as with a private individual. *Board, etc.,* v. *Barnes,* 123 Ind. 403, and *Board, etc.,* v. *Johnson,* 127 Ind. 238, distinguished.

SAME.—*Practice.— Contract Spread of Record.—Admission Implying.*—Where the record contains an express admission that a contract was entered into between the parties as alleged in the complaint, the admission implies that there was a contract properly spread of record, and makes unavailing the objection that it is not shown that the contract was spread upon the record of the board of county commissioners as the statute requires.

From the Tippecanoe Circuit Court.

*S. P. Baird, W. D. Wallace, F. S. Chase, J. B. Sherwood, J. B. Milner* and *C. E. Lake,* for appellant.

*G. O. Behm, A. O. Behm, J. R. Coffroth, F. Winter* and *J. B. Elam,* for appellee.

The Board of Commissioners of Tippecanoe County *v.* Mitchell.

ELLIOTT, C. J.—The appellee was at the time of the execution of the contract upon which this action is founded, clerk of Tippecanoe county. The contract was entered into on the 11th day of February, 1885. The special finding states that the contract was made at a special session of the board of commissioners, and that " it was entered of record." The contract is expressed in an order of the board which reads thus: · " Whereas, an indispensable public necessity exists for indexing and re-arranging all the papers and files in the county clerk's office of the county of Tippecanoe, and the board believing that the interests of the county demand that said indexing be done : Now, therefore, it is ordered by the board that William C. Mitchell be and is hereby authorized and directed to index all papers on file in the clerk's office, except the papers filed in the superior court, and he is further directed to box said papers in boxes provided by the board of commissioners of this county, and he is also directed to procure indices for doing said work, and it is especially agreed by said board and said William C. Mitchell that said Mitchell shall have and receive for said work three cents for each and every entry in said indices made and papers rearranged in new file boxes." The appellee did the work required by the contract, and filed his claim with the board of commissioners.

The record contains an express admission that a contract was entered into between the parties as alleged in the complaint, and in the formal entry of the admission is this clause : "And in connection with said admission it is agreed and understood that should there be any formal variance between said copy in the complaint and the original contract as entered in the records of said commissioners, the same may be corrected at any time." This admission implies that there was a contract properly spread of record, and makes unavailing the point that it is not shown that the contract was spread upon the record as the statute requires.

The fact that the appellee was an officer of the county

does not of itself authorize the conclusion that the contract is voidable because opposed to public policy. It is quite well agreed that the officers controlling the affairs of a public corporation may contract with ministerial officers of the corporation, unless such contracts are prohibited by statute. *Evans* v. *City of Trenton*, 24 N. J. L. 764; *City of Detroit* v. *Redfield*, 19 Mich. 376; *Mayor, etc.*, v. *Muzzy*, 33 Mich. 61; *McBride* v. *City of Grand Rapids*, 47 Mich. 236; *United States* v. *Brindle*, 110 U. S. 688; *State, ex rel.*, v. *Hauser*, 63 Ind. 155. It is probably true that, in cases where fraud or corruption is alleged as a cause for avoiding a contract the official relations subsisting between officers of the same public corporation may be influential as a circumstance indicative of fraud, but of itself it does not vitiate a contract otherwise free from infirmity.

The statute provides that " The board of county commissioners shall, unless in cases of indispensable public necessity, to be found and entered of record as part of its orders, make no allowance not specifically required by law to any county auditor, clerk, sheriff, assessor, or treasurer, either directly or indirectly." Section 5766, R. S. 1881. This provision recognizes by the clearest implication the powers of the board to make allowances in cases of " indispensable public necessity." The requirement that the board shall find that such a necessity exists, and shall enter upon its record a finding of that fact, implies that there are instances in which the power to make allowances to public officers may be exercised. If there were no such instances, the provision of the statute would be utterly meaningless. The provision is in harmony with the long established principles governing the subject of the powers of the board of county commissioners, and with the decisions asserting that the board of commissioners is, in law, the county. *Vanarsdall* v. *State, ex rel.*, 65 Ind. 176; *Crow* v. *Board, etc.*, 118 Ind. 51; *Board, etc.*, v. *Bunting*, 111 Ind. 143, and cases cited; *Shannon* v. *O'Boyle*, 51 Ind. 565; *Board, etc.*, v. *Saunders*, 17

Ind. 437; *State, ex rel.,* v. *Clark,* 4 Ind. 315.  In the case last named it was said : " In legal contemplation the board of commissioners is the county." But the powers of the board of county commissioners are statutory, and it has such powers only as the statute expressly or impliedly confers. The statute from which we have quoted restricts the power of the board to make contracts with officers, for it must be considered in connection with the other statutes granting broader powers, but it does not entirely deprive it of power to make such contracts. It confines the power to make such contracts to cases where there is an " indispensable public necessity." Where there is no such necessity there is no power to contract with other county officers, but where there is such necessity the power exists.

Repeals by implication are not favored, and, where it can be done without doing violence to the language of the Legislature, an earlier and a later statute must be construed together and both given force. We think that there is no difficulty in applying this rule to the present case. The act of 1883 forbids allowances unless provided by law, and the act of 1879 directs that allowances may be made in cases of " indispensable public necessity." Construing, as we must, these statutes together, the plain conclusion required is, that where there is an " indispensable public necessity," there is authority of law for making a contract with a county officer. Of course, if there is the general power to contract there is, also, the incidental power to pay the agreed compensation.

The statute vesting in the board of commissioners the power to determine when an " indispensable public necessity " exists was complied with in this instance. There was a decision adjudging that such a necessity did exist, and that decision was duly entered of record. It is probably true that the decision is not conclusive. It is, as we are inclined to believe, subject to review. But it can not be reviewed unless it is attacked in the proper mode. *Nichols* v. *Howe,* 7 Ind. 506. There must be a pleading properly alleging

facts showing that the finding of the existence of a public necessity was wrong. There is no pleading in this case that does this, although there is an attempt to do so. But we think that if it should be conceded that the decision of the board may be reviewed, and that the answer attempting to show that the decision is wrong, still the record affirmatively shows that upon this point the finding is right on the merits.

If the appellee's claim is to be regarded as one for extra services as an officer, the appeal must be sustained. If the claim is for compensation for duties performed by him as clerk he can not recover. Or, again, if the order of the board is to be construed as an attempt to add new official duties and give compensation for their performance, the appellee must fail. The cases supporting the doctrine indicated are numerous, and we strictly adhere to them. *Board, etc.*, v. *Johnson*, 127 Ind. 238; *Board, etc.*, v. *Barnes*, 123 Ind. 403; *Williams* v. *Segur*, 106 Ind. 368; *Board, etc.*, v. *Gresham*, 101 Ind. 53; *Wright* v. *Board, etc.*, 98 Ind. 88, and cases cited.

The appellee's claim is founded upon a contract to perform work required by "indispensable public necessity." His whole right grows out of the contract. His claim is not for extra compensation, not for official services, nor for added official duties. The claim is solely and exclusively for compensation due under a contract. On that contract rests his claim. The board might certainly have made such a contract with a private individual, and if it could do this it may make such a contract with the clerk. There are, indeed, strong reasons why it is proper to make the contract with the clerk rather than with a stranger. There are instances in which in the strictest sense of the term there is an "indispensable public necessity" for making such a contract, as, for instance, where there is a removal caused by the destruction of a court-house, or by the construction of a new one.

As the right of the appellee rests entirely upon a special contract made by the board because of the demands of "an

indispensable public necessity," the case is not within the scope of the doctrine of the cases declaring that extra compensation can not be paid to county officers. That cases exist in which a valid contract may be made by the board of commissioners with a county officer has been adjudged. *Board, etc.,* v. *Weeks,* 130 Ind. 162; *Hoffman* v. *Board, etc.,* 96 Ind. 84; *Garrett* v. *Board, etc.,* 92 Ind. 518; *Boggs* v. *Caldwell County,* 28 Mo. 586. To the class of cases represented by those just named this case belongs, and not to the class of which *Board, etc.,* v. *Barnes, supra,* and *Board, etc.,* v. *Johnson, supra,* are types. There is a wide and clear difference between the two lines of decisions, and within the line established by the decisions in such cases as *Hoffman* v. *Board, etc., supra,* falls this case, inasmuch as there is a special contract made because the work for which it provides was demanded by an "indispensable public necessity."

We can not say from the evidence that the trial court erred in adjudging the amount of recovery.

Judgment affirmed.

Filed Feb. 24, 1892; petition for a rehearing overruled April 26, 1892.