GARRIGUS *v.* BOARD OF COMMISSIONERS OF HOWARD COUNTY ET AL.

[No. 19,119.   Filed June 5, 1901.]

COUNTIES.—*Records.—Employment of Expert Accountants.—Order.— Public Necessity.*—An order of the board of county commissioners employing expert accountants to examine the county records and collect such sums of money as might be found due the county, which states that in the judgment of the board an indispensable public necessity exists for the employment of such experts, is sufficient under §7853 Burns 1894. without stating the facts constituting the necessity. *pp. 107, 108.*

SAME.—*Statutes.—Repeal.*—Section 7853 Burns 1894, forbidding the allowance of claims for services to be paid by commission or percentage, is not repealed by the act of 1891 fixing the compensation and prescribing the duties of certain State and county officers (Acts 1891, pp. 424-452). *p. 108.*

SAME.—*Statutes.—Constitutional Law.*—Section 39 of the act of 1879 (§7853 Burns 1894), relative to extra allowances by the board of county commissioners is not unconstitutional in that its subject is not embraced in the title of the act. *pp. 108, 109.*

SAME.—*Contracts.—Employment of Expert Accountants to Examine Records.*—The board of county commissioners has both statutory and inherent power to enter into contracts for the employment of persons to discover and collect money and property due the county which are wrongfully withheld from it, or which have been lost or misapplied through mistake, negligence, or fraud. *pp. 109, 110.*

Garrigus v. Board, etc.

COUNTIES.—*Employment of Expert Accountants to Examine Records.* —The employment of expert accountants to examine the county records for the purpose of discovering and collecting claims due the county is not a delegation of the official powers and duties belonging to the board, where it is shown that the work could be accomplished only by long, laborious, and careful search by experts. *p. 110.*

SAME.—*Expert Accountants.—Recovery of Claims Due County.—Compensation.*—A county cannot evade liability to expert accountants in discovering and collecting claims due the county on the ground that they recovered more than it was entitled to receive, where the county accepted and retained the amount recovered. *pp. 110, 111.*

From Hamilton Circuit Court; *J. F. Neal,* Judge.

Action by Milton Garrigus against the board of county commissioners to recover for services of expert accountants in examination of certain public records. From a judgment for defendants, plaintiff appeals. *Reversed.*

*M. Bell, W. C. Purdum, F. E. Gavin, T. P. Davis, J. L. Gavin, G. Shirts* and *W. R. Fertig,* for appellant.

*J. C. Blacklidge, C. C. Shirley* and *C. Wolf,* for appellees.

DOWLING, J.—This was an action upon an agreement in writing made by the board of commissioners of Howard county with two expert accountants for services to be performed by the latter in the examination of certain public records and accounts, and the collection of such sums of money as might be found due to the county. The suit was commenced in the Howard Circuit Court, and the venue was changed to the county of Hamilton. The board filed a demurrer to the complaint for want of facts, and it was sustained. Error is assigned upon this decision.

The material allegations of the complaint were these: Errors were supposed to exist in the records, vouchers, and settlement sheets in the office of the auditor of Howard county, and in other public offices; by reason of such errors, mistakes, and omissions, large sums of money were, in fact, due to Howard county; the existence of such errors could be ascertained only by careful search by skilled experts; no

officer of the board or county possessed the requisite skill for such investigation.  Fleener and Hunter were expert accountants, and were qualified to make the necessary examinations.

At the regular June term, 1893, of said board, Fleener and Hunter made a written proposition to said board whereby they offered to perform said work and to collect such moneys as might be found due to the county, without cost to the county, and to pay the same into the county treasury; for these services they were to receive a sum equal to onehalf the amount collected and paid in; this proposition was accepted by the board, and its record stated that an indispensable public necessity existed for the employment of the said expert accountants.  As a part of the same order, the auditor was directed to issue warrants on the treasurer for all sums becoming due to them under said employment.  Fleener and Hunter proceeded to make the proposed investigation, and, after great labor and expense, discovered divers errors and omissions which had resulted in loss to the county; these errors and omissions were, through the exertions of the experts, corrected and supplied, and the moneys discovered by the accountants to be due to the county in consequence of such errors and omissions were by them collected and paid into the county treasury; all of the conditions of said contract to be performed by the said Fleener and Hunter were performed by them, and they became entitled to $2,021.81 with interest thereon, for their services.  In pursuance of said contract, the auditor of said county drew his warrant in favor of said Fleener and Hunter for $1,277.09 being a part of the amount to which they were entitled; afterwards, the appellant, who was such auditor, for the reason that no claim for said sum had been first filed with him and presented to the board for allowance, repaid the said sum to the county on demand of the county, and the said Fleener and Hunter by their written assignment transferred all of their claim under their said agreement to the appellant.

Fleener and Hunter were made defendants, and filed their answer admitting all of the allegations of the complaint.

The particular sections of the statutes necessary to be considered are these: "Section 39. The board of county commissioners shall, unless in cases of indispensable public necessity, to be found and entered of record as part of its orders, make no allowance not specifically required by law to any county auditor, clerk, sheriff, assessor or treasurer, either directly or indirectly, or to any clerk, deputy, bailiff or any employe of such officer; nor shall they, except in cases above provided, employ any person to perform any duty required by law of any officer, or for any duty to be paid by commission or percentage. For a violation of these provisions, each member of such board favoring the same shall be guilty of a misdemeanor, and, on conviction, shall be fined in any sum not less than double nor more than five times the amount of such allowance, to which may be added imprisonment in the county jail for any period not more than sixty days, and the office of such commissioner shall be declared forfeited. If it be found necessary, and so entered of record, to employ any person to render any service as contemplated in this section, as a public necessity, the contract for such employment shall be spread of record in said court; and, for such services rendered, the claimant shall file his account in said court ten days before the beginning of the term, and any taxpayer shall have the right to contest the claim." Acts 1879, s. s., pp. 130, 142, §39; §5766 R. S. 1881; §7853 Burns 1894. "Such commissioners shall be considered a body corporate and politic by the name and style of 'The board of commissioners of the county of———'; and as such, and in such name, may prosecute and defend suits, and have all other duties, rights and powers incident to corporations, not inconsistent with the provisions of this act." §7820 Burns 1894, §5735 R. S. 1881. "Such commissioners, in their respective counties, shall have power at their meetings: First. To make orders re-

specting the property of the county, in conformity to law; * * * and to take care of and preserve such property. * * * Third. To audit the accounts of all officers having the care, management, collection or disbursement of any moneys belonging to the county or appropriated for its benefit. Fourth. To perform all other duties that may be enjoined on them by any law of this State." §7830 Burns 1894, §5745 R. S. 1881.

The first ground upon which the sufficiency of the complaint is denied is that the facts constituting the "indispensable public necessity", mentioned in the statute, were not found and entered of record as a part of the order of the board. The facts out of which the supposed indispensable necessity arose fully appeared in the proposition of the experts which was spread upon the record, and constituted a part of the entry in the proceeding. The order of the board then recites that, in the judgment of the board, "it would be to the interests of the county to accept the same (the written proposition of F. and H.), and that an indispensable public necessity exists for the employment of an expert accountant to examine the books, vouchers, and settlements in the various offices of Howard county," etc. This statement of the necessity for such employment and allowance, we think, was sufficient. The statute does not say that the facts constituting the necessity shall be shown. The Constitution of this State, §28, article 4, declares that "No act shall take effect until the same shall have been published and circulated in the several counties of this State by authority, except in case of emergency; which emergency shall be declared in the preamble, or in the body of the law." This requirement has always been supposed to be properly complied with by a statement in the preamble or body of the act that "Whereas an emergency exists for the immediate taking effect of this act, therefore, the same shall take effect from and after its passage." The language of §39, *supra,* certainly requires no more particular statement of the "in-

dispensable necessity" than does the Constitution of the emergency upon the declaration of which the taking effect of a statute is made to depend.

It is next objected that §39, *supra,* was repealed by the act of 1891 (Acts 1891, pp. 424-452, §137). The title of the act of 1891 is: "An act fixing the compensation and pre- scribing the duties of certain State and county officers, and providing penalties for the violation of its provisions." Its last section (137) is in these words: "All laws and parts of laws *in conflict with this act* are hereby repealed *to the extent of such conflict."* The later act contains no provi- sion corresponding to §39 of the act of 1879, or relating to the same subject-matter. We are unable to discover a conflict between §39 of the act of 1879 and any of the provisions of the act of 1891. There is, therefore, so far as we can dis- cover, neither an express repeal of §39 by the act of 1891, nor a repeal by implication. Section 39 of the act of 1879 contains provisions which are not found in the act of 1891, but which are entirely consistent with the purposes of the later statute, and which are essential to the protection of the interests of the counties of this State. If read in connec- tion with the act of 1891, §39, *supra,* seems to supply an omission in the former act. The repealing clause of the act of 1891 appears to have been carefully framed, and is special and not general. We find in the later statute no evi- dence of an intention on the part of the legislature to repeal §39 of the act of 1879.

The validity of §39, *supra,* is also assailed on the ground that it is unconstitutional for the reason that its subject is not embraced in the title of the act of which it is a part, nor properly connected therewith, as required by §4, article 19, of the Constitution of this State.

The subject of the act of 1879 is fees, salaries, and the compensation of officers and other persons for services ren- dered to the public. The title of the act, so far as the same need be set out, is as follows: "An act fixing certain fees

to be taxed in the offices, and the salaries of officers named therein; providing for certain employes in certain public offices, and fixing their compensation; defining certain duties and liabilities of officers and persons therein named;" etc.

As the negligence or dishonesty of officers, resulting in defects, omissions, or false entries in the public records, and the consequent loss of public funds, or other property, might render the employment of expert accountants, or other agents, indispensably necessary to the protection of the public interests, a provision for the employment and compensation of such agents and accountants was germane to the subject of the act. *Henderson* v. *State, ex rel.,* 137 Ind. 552, 559, 24 L. R. A. 469. In the absence of statutory regulations imposing on the successors of such delinquent officers the duty of completing their work, such successors could not be expected to discharge those duties which should have been performed by their predecessors in office. The power to contract for such services so conferred by the act in question is to be somewhat strictly construed, but the agreement sued upon is not invalid for any of the reasons given in *Board, etc.,* v. *Mitchell,* 131 Ind. 370, 374, 15 L. R. A. 520.

It is next contended that if §39, *supra,* is invalid, the board had no authority, either inherent or statutory, to enter into the agreement in question. We hold that §39, *supra,* is valid, and that it was in force when the agreement with Fleener and Hunter was made; but even if we are in error in this, it will be found that this court has accorded to the county board very full powers to enter into contracts for the benefit of the property of the county, and that these powers were amply sufficient for the purposes of the agreement with Fleener and Hunter. §5745 R. S. 1881, §7830 Burns 1894; *Hoffman* v. *Board, etc.,* 96 Ind. 84; *Board, etc.,* v. *Mitchell,* 131 Ind. 370.

In its administrative character, the board of commissioners has powers and duties, both inherent and statutory, with reference to the property and revenues of the county,

which are of the highest importance to the public welfare. One of the most obvious of these is the duty to discover and collect all moneys and property belonging to the county which are wrongfully withheld from it, or which have been lost, or misapplied, through mistake, negligence, or fraud. *Duncan* v. *Board, etc.,* 101 Ind. 403; *Board, etc.,* v. *Mitchell,* 131 Ind. 370; *Board, etc.,* v. *Gardner,* 155 Ind. 165.

The objection that the work to be performed by Fleener and Hunter was a part of the official duty of the board, and that the board could not delegate the performance of this duty to others, is earnestly pressed upon our attention.

The complaint averred that "the existence of these claims, and each item thereof, could be ascertained only by long, laborious, and careful search of experts." Such a search was not that of "auditing accounts of officers", which the statute imposed upon the board. It was plainly a duty the board could not perform, but one which, from its nature, must be committed to others. The employment of the expert accountants for the purposes named in the agreement did not involve any abandonment or delegation of the official powers and duties of the board. The proceedings of the accountants were at all times subject to the supervision and control of the board, and the persons so employed were mere agents and servants of the county.

Again, counsel for appellee contend that the complaint is bad because it appears from its allegations that the sum collected from the State by Fleener and Hunter was in excess of the amount justly due. As the county accepted, and yet retains, the amount so collected, it cannot evade its liability to its agents on the pretext that they recovered for it more than it was entitled to receive. Besides, this objection, if valid, goes only to a part of the appellant's claim, and, if allowed, would not render the complaint bad.

The last point made by counsel for appellee is that the terms of the agreement, by which Fleener and Hunter were to receive fifty per cent. of the amounts recovered, were un-

fair and unconscionable. If the work undertaken by the experts was as difficult and tedious as the complaint alleges and as the demurrer admits, it cannot be said that the contingent compensation provided for by the contract was unfair, or out of proportion to the nature and amount of the services to be rendered. The total amount recovered was not great, and none of the reasons upon which the contracts referred to in the cases cited by appellee were held invalid applies to the agreement before us. In our opinion, the complaint was sufficient.

Judgment reversed, with instructions to overrule the demurrer to the complaint, and for further proceedings in conformity herewith.