## Board of Commissioners of the County of Howard *v.* Garrigus.

[No. 20,248. Filed January 12, 1905. Rehearing denied May 11, 1905.]

1. Fraud.—*When Actionable.*—In order to constitute actionable fraud it must appear that the complaining party has been damaged or prejudiced thereby. p. 598.

2. Pleading.—*Fraud.*—A pleading relying upon fraud will be judged not by epithets or characterizations, but by the facts specially set forth as constituting the wrong. p. 598.

3. Same.—*Fraud.*—*Presumption.*—Men are presumed to be honest in their transactions and courts will not search the evidence in a cause for fraud unless it is specially pleaded. p. 599.

4. Same. — *Answer.* — *Fraud.* — *Collection of Money Due Counties.* —*Contracts.*—Where the complaint shows a contract between the board of commissioners of a county and expert accountants for the collection of money due such county, and the collection by such experts of sums aggregating $3,949, and further sums aggregating $1,489, and that such sums were turned over to such county, an answer showing that such experts, to obtain the contract, falsely represented that large sums were due such county, when in fact noth-

| 164 | 589 |
| 164 | 181 |
| 164 | 589 |
| 165 | 41 |
| 164 | 589 |
| 169 | 98 |

ing was due, and failing to show that such alleged specific items of the complaint were not proper charges against the parties from whom collected : and failing to show that such collections were made by deceit, artifice or unfairness; and failing to show any injury, over-reaching, wrong or public impolicy, such answer is bad.     p. 599.

5.   STATUTES.— *Construction.— Boards of Commissioners.— Accountants.—Public Necessity.—Record.*—Where a board of commissioners entered into a preliminary contract for the employment of expert accountants for the collection of money due such county on a percentage, on June 6, and on June 14 such board spread of record a public-necessity order and on June 15 spread of record the complete contract, such contract is valid under the statute, §7853 Burns 1901, §5766 R. S. 1881.     p. 601.

6.   SAME. — *Construction. — Boards of Commissioners. — Accountants. —Contracts.—Record.*—A contract entered into between the board of commissioners of a county and expert accountants to recover money due such county at a certain percentage must, under §7853 Burns 1901, §5766 R. S. 1881, be spread of record by such board before such accountants act upon the same.     p. 604.

7.   NEW TRIAL.—*Evidence.—Directing Verdict for Plaintiff.*—Where the fact as to whether a contract was spread of record in the commissioners' court at a certain time is material, and four witnesses testify to such fact and one testified against such fact, the direction of a verdict for plaintiff is erroneous and a new trial should be granted.     p. 605.

8.   CONTRACTS.—*Board of Commissioners.—Accountants.—Validity.*— A contract between a board of commissioners and expert accountants to collect all moneys due such county on a percentage is governed by the provisions of §7853 Burns 1901, §5766 R. S. 1881.   *Weatherhogg v. Board, etc.* (1902), 158 Ind. 14, distinguished.   p. 605.

9.   NEW TRIAL.—*Evidence.—Negative.*—The court should not direct a verdict for plaintiff where plaintiff's evidence is positive and defend-ant's of a negative character, the weight being for the jury.   p. 609.

From Hamilton Circuit Court; *John F. Neal,* Judge.

Action by Milton Garrigus against the Board of Commissioners of the County of Howard.   From a judgment for plaintiff, defendant appeals.   Transferred from the Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Blacklidge, Shirley & Wolf,* for appellant.

*Bell & Purdum, Shirts & Fertig,* and *Gavin, Davis & Gentry,* for appellee.

HADLEY, C. J.—This was a suit brought by appellee against appellant upon a contract alleged to have been made by appellant on the one part, and Fleener & Hunter, on the other, which contract was afterwards assigned to appellee.

It is alleged, in substance, in the complaint, that for and during thirty years prior to 1892 there were many errors in the records, books, vouchers and settlement sheets in the office of the auditor of said county, and in the records of the county treasurer and sheriff, and also in the various records of the Howard Circuit Court, and many other courts in other counties in said State, and in the semiannual settlement sheets filed with the Auditor of State, and that, on account of such errors, mistakes and omissions, there were large amounts of money justly due and owing to Howard county; that the existence of such claims, and each item thereof, in favor of said county, and the facts in relation thereto, were then unknown to the board of commissioners and said Fleener & Hunter; that the existence of said claims, and each item thereof, and the facts in relation thereto, could only be ascertained by long, laborious and careful search of experts; that it was not then known whether such search would result in the finding of any such mistakes or claims; that said investigation and work required skill, and expert accountants in that special line of work, and that no officer or person connected with said county government possessed such skill and ability, and that said Fleener & Hunter were expert accountants, and had the necessary ability and skill to perform said service; that, under such circumstances, on June 6, 1892, at the regular June session of said board of commissioners, said Fleener & Hunter made a written proposition to said board of commissioners in the words and figures following: "To the honorable the board of commissioners of Howard county. Gentlemen: We will examine the books, vouchers and settlement sheets in the various offices of the county and ascertain whether or not there is any money due the county

on account of erroneous apportionments and settlements; also, whether or not there is any money due the county from the State or from any other source, or on account of errors in any of the settlements of the school funds. And in the event we find anything due the county we will collect the same, without cost to the county, and pay the same into the county treasury, and for our services we will charge you a sum equal to one-half we collect for the county, and payment to be made to us as fast as collections are made by us and paid into the county treasury. But it is understood that this proposition does not include an examination of the accounts of the county officers, nor of the allowances made by the board of commissioners. Respectfully submitted, Fleener & Hunter, by R. B. Sears." That on said 6th day of June, 1892, the defendant wrote and indorsed thereon the following words and figures, to wit: "And the board, having carefully examined the above and foregoing proposition, hereby accepts the same, and orders the same made a matter of record this 6th day of June, 1892. And the auditor is hereby authorized to draw his warrant on the county treasury, for all accounts due Messrs. Fleener & Hunter that are in accordance with this contract. John T. Long, D. E. Warnock, George Newkirk, commissioners of Howard county."

It is further alleged that the board of commissioners on June 14, 1892, at said June session, duly found and entered of record as part of its orders that an indispensable public necessity existed for the employment of expert accountants to examine said books, vouchers and settlements in the various offices of Howard county, Indiana, and to collect any moneys due the county, and for the making of said contract with said Fleener & Hunter to render the services so contemplated by said proposition so made on the 6th day of June, 1892, and then and there duly accepted said proposition, and employed said Fleener & Hunter to perform said services, and that the action of said board of

commissioners and their proceedings in relation to said proposition and contract were in the words and figures following: "Proposition and contract of Fleener & Hunter to collect back fees due Howard county from the State of Indiana and other sources. And the board, having examined said proposition, and being sufficiently advised in the premises, finds that it would be to the interest of the county to accept the same, and that an indispensable public necessity exists for the employment of an expert accountant to examine the books, vouchers and settlements in the various offices of Howard county, Indiana, and collect any moneys that may be due the county on account of errors or omissions in making said collections and in said settlements. It is therefore ordered by the board that the above and foregoing proposition be accepted, and that said Fleener & Hunter be, and they are hereby, employed to make said examination, and to collect any money due the county, as above stated in the proposition, and that they be allowed a sum equal to one-half of all sums of money so collected by them for Howard county, Indiana. And the auditor is hereby ordered to issue them warrants on the county treasurer for any sum due them under the terms of the above proposition and contract, upon accounts duly verified by them, and filed with the auditor as shown and set forth in the contract between said Fleener & Hunter, of the one part, and Howard county, Indiana, by her board of commissioners, of the other part, as on file in this court; said warrants to be so drawn and issued by the auditor of Howard county, Indiana, when said money is collected by Howard county, Indiana, or when the Auditor of State has issued a warrant on the Treasurer of State for the same, in favor of Howard county, Indiana."

It is further alleged that said Fleener & Hunter, under and pursuant to said contract, proceeded to and did, at great expense to themselves, make a thorough and complete exam-

Vol. 164—38

ination of the books, records, settlement sheets and the various records of the Howard Circuit Court, and the records of many other counties in the State of Indiana, and also the records of the Auditor of State from the years 1861 to 1892, inclusive, and that, as a result of such investigation and examination, said Fleener & Hunter discovered, among other errors and omissions, that a large amount of money in the form of taxes, to wit, $3,949, had been erroneously assessed and paid by the taxpayers of Howard county, which sum had been erroneously included in the settlement sheets with the auditor of said county during a period of thirty years, and (after describing said errors and omissions) further alleging that, through the neglect and carelessness of the several auditors of said county, the county of Howard never took or received credit in the several annual or semiannual settlements, by distribution or otherwise, for said sum of $3,949, and that, as a result of said examination by and, services of said Fleener & Hunter, and the correction of said errors, there was paid and re- funded to said county, through the Auditor of State, said sum of $3,949; that is to say, that in the settlement through the Auditor of State in December, 1892, Howard county received, accepted, used and appropriated the said sum of $3,949 so discovered and recovered by said Fleener & Hunter.

It is further alleged that as a result of the investigation and examination of the records and books of the finances of Howard county, Indiana, also of the records, books and papers of other counties in said State, including the counties of Madison, Miami, Hamilton, Grant, Carroll and Huntington, by said Fleener & Hunter, they found that there was due and owing to the county of Howard, on account of changes of venue from different counties, a sum in the aggregate amounting to $1,489.60, which amount was duly collected by said Fleener & Hunter from the said counties and paid into the treasury of said Howard county,

Indiana, and that said sum of $1,489.60 was duly received, accepted, used and appropriated by said Howard county. It is further shown by the allegations in the complaint, and bill of particulars filed therewith, that the greater part of said items, making the aggregate of said amounts so recovered by said county, were on account of claims which were due and owing said county more than six years prior to 1892, and the collection of which by legal process was barred by the statute of limitations.

It is further alleged that the said services were so rendered and performed by said Fleener & Hunter for the board of commissioners pursuant to, in accordance with, and as a part of, said contract aforesaid, and that all of said services and collections grew out of the same transaction and agreement, and that said Fleener & Hunter fully and duly performed all the terms and conditions of said contract and employment on the part of said Fleener & Hunter to be performed, and that, under the terms and conditions of said contract, and by reason of said services and the collections made by said Fleener & Hunter, and caused to be made by them, and turned into the county treasury and retained by the county without cost to the county, there became due and owing to said Fleener & Hunter from said county the sum of $2,021.81, with interest thereon, and that, under the circumstances existing at the time the contract was made, the said contract, when made, was fair and reasonable.

It is further alleged that under and pursuant to said order of said board of commissioners, appellee, as auditor of said county, in good faith drew a warrant in favor of said Fleener & Hunter for $1,277.09, being a part of the amount to which said Fleener & Hunter were entitled, and that thereafter appellee, for the reason that no claim therefor had been first filed with the auditor of said county and presented to the board of commissioners for allowance, as required by the statute, on demand of said county, repaid

the said sum to said county; and that thereafter, because said appellee had been compelled to refund to the board of commissioners said sum, with interest thereon, the said Fleener & Hunter, as collateral security therefor, duly assigned in writing to appellee all of said claims due them for services rendered by them for Howard county under said contract.

Bills of particulars of all amounts collected from the State and the several counties are filed with the complaint as exhibits. The complaint was answered in nine paragraphs. The second, third, fourth and ninth were carried out on demurrer. The second and ninth are in all material respects the same, and allege, in substance, that Fleener & Hunter and the board entered into contractual relations as set out in the complaint. The proposition was presented and accepted in writing on the 6th day of June, 1892. Said proposition was marked "filed" by the appellee as auditor, and placed on file among the papers of the county, but no record thereof was made as of that day. The records of the board appear on their face substantially as set out in the complaint, but it is averred that on and prior to the 6th day of June, 1892, and until after November, 1893, the appellee was auditor of Howard county, and acted as such; that he and Fleener & Hunter had formed a conspiracy to obtain from the board the contract sued upon, and so to use it that a large amount of money would be obtained from the State and surrounding counties. They represented to the board that there were large sums due the county from the various sources mentioned, and it would require experts to make the search and collect the money. All of said statements were false and known to be false, but the board relied upon them, and the written acceptance was purposely drawn by Fleener & Hunter and appellee so that the auditor could draw warrants for fifty per cent. of the amounts secured without filing any claim for services before the board as required by law. Warrants therefor were drawn contrary

to the statute. The proposition and acceptance were not spread of record on June 15, 1892, as it appears, but they were placed there by the appellee long after all services had been rendered by Fleener & Hunter. Fleener & Hunter pretended to find large amounts to be due as set out in exhibit B with the complaint. That said statement was wholly false, and known to be so by them, but by means thereof the board was deceived and defrauded into making the finding set out in the complaint, and forwarding the same to the Auditor of State, by that means obtaining from the State whatever money was obtained. Fleener & Hunter pretended also to find large amounts to be due from other counties, and collected whatever is set out in exhibit A by the means set out in the complaint. There was nothing due Howard county from any of the sources mentioned. The State and other counties were defrauded of the amounts set out in the complaint by means of the false statements referred to.

The third paragraph pleads the same facts as a partial answer addressed to exhibit A, being the amounts collected as change of venue costs due Howard county. The fourth likewise pleaded the same matter as a partial answer addressed to exhibit B, being the amount collected from the State as refunded taxes. The first paragraph was a general denial; the fifth, *non est factum;* sixth, payment; seventh, partial payment; and eighth, no consideration. Reply in general denial to the sixth, seventh and eighth paragraphs. Error is assigned on the sustaining of the demurrer to the second, third, fourth and ninth paragraphs of answer, and the overruling of appellant's motion for a new trial. On a former appeal of this case the sufficiency of the complaint was determined. *Garrigus* v. *Board, etc.* (1901), 157 Ind. 103.

Was it error to sustain the appellee's separate demurrer to all or either the second, third, fourth or ninth paragraphs of answer? The theory of the pleader in these paragraphs

is not obvious. A little more condensed they come to this: Appellee and Fleener & Hunter formed a conspiracy to obtain from the board the contract sued on, that they might employ it to obtain a large sum of money from the State and surrounding counties. They induced the board to make the contract by making it believe that a large sum of money was due the county from these sources, and that to ascertain the amount and collect the same it was necessary to employ an expert. These representations were false. Neither the State nor surrounding counties were indebted to Howard county, and by means of said representations the board and the State and surrounding counties were deceived and defrauded. The nature of the conspiracy and character of the consummated fraud are left to conjecture.

1. "Fraud," says a distinguished author, "in its ordinary application to cases of contracts, includes any trick or artifice employed by one person to induce another to fall into or detain him in an error, so that he may make an agreement contrary to his interest." 1 Bouvier's Law Dict. (Rawle's Rev.), 844. It is a rule of universal application that, to constitute actionable fraud, it must appear that the complaining party has been in some way damaged or prejudiced. *Franklin Ins. Co.* v. *Humphrey* (1879), 65 Ind. 549, 560, 32 Am. Rep. 78; *Bish* v. *Van Cannon* (1884), 94 Ind. 263, 266; *Srader* v. *Srader* (1898), 151 Ind. 339, 342; 14 Am. and Eng. Ency. Law (2d ed.), 137. Acts of misrepresentation and deception, which involve only a matter of good morals, are questions for the conscience, and courts will take cognizance only of such delinquencies and wrongs when it is shown that another has been induced by them to do some act to his injury.

2. Another elementary rule is that a pleading relying upon fraud and deception will be judged, not by the epithets used, nor the general characterization of acts, but by the facts that are specially set forth as constituting the wrong. *Curry* v. *Keyser* (1868), 30 Ind. 214; *Joest* v. *Williams*

(1873), 42 Ind. 565, 568, 13 Am. Rep. 377; *Huffman* v. *Copeland* (1894), 139 Ind. 221, 224; *Stroup* v. *Stroup* (1895), 140 Ind. 179, 183, 27 L. R. A. 523; *Seward* v. *Town of Liberty* (1895), 142 Ind. 551, 553; *Guy* v. *Blue* (1897), 146 Ind. 629, 632.

3. Courts presume that all men, in dealing with their fellows, act with probity and honesty, and will not undertake to sift the testimony in search of fraud, unless the complaining party, in his pleading, has directed attention to particular facts, or acts of wrongdoing.

4. Does it appear that Howard county, or any other corporation or person, was misled and injured or in any way prejudiced by the things alleged in the answers to have been done by appellee and Fleener & Hunter? It is admitted by appellant that the contract was entered into in the terms and manner set forth in the complaint, and we must consider these answers thereto with reference to the averments they seek to avoid. It is averred in the complaint that Fleener & Hunter represented to the board that there was a large amount of money due Howard county from the State and surrounding counties on account of the refunding of taxes and change of venue costs, which had resulted from errors and omissions in collections and settlements, the ascertainment of the true amount of which would require the services of an expert. The board being induced by such representations, and finding that an indispensable necessity existed therefor, employed Fleener & Hunter "to make said examination and collect any money due the county." The sole purpose of the employment, as alleged, was to discover and collect money "due the county," and, whether or not Fleener & Hunter succeeded in making good their representations, the county was to be at no expense, and subjected to no liability, except fifty per cent. of the net amount brought into the treasury by Fleener & Hunter. The answers, however, allege that the representations of Fleener & Hunter were false; that neither the State nor

the surrounding counties owed Howard county any sum whatever. But the facts set out, and those admitted because not denied, wholly fail to support the conclusions of the pleader. It is charged in the complaint that the examinations of Fleener & Hunter resulted in their discovery of 322 items of mistake against Howard county in the various settlements made by the county with the State within a period of thirty years, aggregating $3,949, a report of which mistakes, upon being certified to the Auditor of State, was by him found correct, and the amount refunded and paid over to Fleener & Hunter, and by them into the treasury of Howard county. The complaint also avers that said experts further discovered that twenty-eight lawsuits had been tried in the circuit court of Howard county on change of venue from contiguous counties within a period of eighteen years, the cost of which trials, taxed for and due and unpaid to Howard county, aggregating the sum of $1,489, was collected by Fleener & Hunter, and the full amount paid by them into the treasury of Howard county. It is not denied in these answers that any of the 322 items reported and claimed by the experts as mistakes against Howard county were errors, and not denied that they were proper charges against the State; nor is it denied that any of the twenty-eight venued causes were tried in the Howard Circuit Court; nor is it claimed that the costs in any of the cases were improperly taxed, or that they had been paid. Neither is it averred that any deceit, artifice or unfairness was employed by the experts in the examination, presentation and adjustment of the accounts between Howard county and the State and surrounding counties, or that any secret or unlawful method was pursued.

Appellant endeavors to sustain these answers by the doctrine announced in *Overshiner* v. *Wisehart* (1877), 59 Ind. 135, *Root* v. *Stevenson* (1865), 24 Ind. 115, *Brown* v. *First Nat. Bank* (1894), 137 Ind. 655, 24 L. R. A. 206, and others of that class, viz., that where parties have made

a bed of fraud they must lie in it; that a court of justice will not undertake to distribute the profits or burdens among fraud-doers, but will leave the parties as it finds them. The doctrine of these cases is good and wholesome enough, but the difficulty is that it does not apply to the facts disclosed by the answers under consideration. No injury, no overreaching, no wrong, no public impolicy, is exhibited by either the second, third, fourth or ninth paragraphs of answer, and the separate demurrer thereto was properly sustained.

Did the court err in directing the jury to return a verdict for the plaintiff? Under the pleas of general denial and *non est factum,* it was incumbent upon the appellee to prove his complaint, and that the contract sued on had been executed according to law. Appellant insists that the evidence discloses that the contract was entered into in violation of §7853 Burns 1901, §5766 R. S. 1881, which provides that, except in cases of indispensable public necessity, to be found and entered of record as a part of its orders, boards of commissioners shall make no allowance not specifically required by law, nor employ any person to perform any duty required by law of an officer, or for any duty to be paid for by commission or percentage.

5. It is claimed that it appears from the evidence that the contract under which the parties acted was entered into on June 6, 1892, eight days before the finding and entering of record of the existence of a public necessity therefor, and that the contract was therefore absolutely void for want of power in the commissioners to make it. By reference to an earlier page of this opinion the proceedings of the board will be found, set out in the order in which they appear of record, to wit: On June 6, 1892, Fleener & Hunter presented their written proposal to examine the books, etc., and on the same day the board accepted the proposition, and ordered it made a matter of record, though, as a matter of fact, it was not spread of record on that day. The acceptance, in general

terms, was indorsed on the proposal, and the paper, by direction of the board, was placed on file among the papers of the auditor's office. Eight days later, at the same term, to wit, June 14, the board again took the matter up, and having entered upon its minutes a finding that there existed an indispensable public necessity for the employment of experts, etc., and that it would be to the interest of the county to accept the proposition of Fleener & Hunter, proceeded formally to employ the latter in the terms set out on a previous page.

It is evident that the board did not intend or understand that it had done anything more on June 6 than to agree to general terms as a basis for a special contract of employment after the details had been worked out and an entry prepared. This is manifest from the references to the pending proposal on file, and expressions used in its order and entry of June 14. "It is therefore ordered," recites the record of that date, "that Fleener & Hunter be, and they are hereby, employed," etc. While §7853, *supra,* does require, as a condition precedent to the power to make a contract within its provisions, the finding by the board, and entry among its minutes, of the existence of a public necessity therefor, yet it does not require, after the necessity has been found and spread of record, that a contract made in pursuance thereof shall be agreed to and recorded before the power of the board to make it arises. The statute is satisfied if the record is made within the term, and before the execution of the contract is entered upon. Here the record of the proposal appears among the proceedings of the board under date of June 15, reference to the page on which it appears being made in the record of the contract of June 14, as follows: "See p. 406." The entry of June 14, considered in connection with the proposal of Fleener & Hunter referred to, makes a complete contract, and the recording of the proposal on the following day constituted a full and complete record of the contract; and, being con-

summated before any step was taken under it, we hold that it was a substantial compliance with the statute.

As a further assault upon the execution of the contract, appellant endeavors to show that the record of the original proposal, which appears to have been entered on June 15, 1902, was not in fact made until long after the services of Fleener & Hunter had been fully performed. The theory being that it was inserted by the appellee, as auditor, in the autumn of 1893, by writing it upon an unfilled page, over the signatures of the commissioners, signed at the bottom, under date of June 15, 1892. The trial was had in July, 1902. The two living commissioners who signed the record, and the auditor, and deputy auditor who wrote it, testified that the commissioners occasionally signed at the bottom of a page not fully occupied; but each was confident, though not absolutely certain, after the lapse of ten years, that the page when signed on June 15, 1892, was in the same condition in which it appeared at the trial.

As against these four witnesses, à witness who became a member of the board of commissioners six months after June 15, 1892, testified that after going to the board he examined the minutes of the June term, 1892, to see what was done in the Fleener & Hunter matter, and did not observe a copy of the original proposal; that on one or more occasions persons came into the auditor's office, and, in the presence of the two commissioners, the auditor and deputy auditor, inquired for the proposal, at a time when it was off the files or misplaced, and neither the commissioners, nor auditor, nor his deputy, gave notice that it was recorded; that he never knew it was recorded until Hunter informed him in the autumn of 1893, when he went to the record and found it as it now appears, and that when he first saw it the color of the ink indicated that the record had been recently made. Under the evidence, there was nothing in the appearance of the record page—in crowding or distribution of the matter, as to different pens, or hand-

writing—to cast suspicion upon its integrity. All the other material evidence in the case consisted of undisputed writings and records, which, without conflict or contradiction, sustain the complaint. In the opinion of the writer, there is vexatious uncertainty about the testimony of this witness. When the witness examined the minutes of the June term, 1892, to see what was done in the Fleener & Hunter matter, he might have been content with an inspection of the minutes made on June 14, as embracing all of it. When the commissioners, the auditor and his deputy failed to call attention to the record when inquiry was made about the misplaced original, the gentlemen might have reasonably believed that it was the original, and not a copy, that was wanted. The color of the ink might have been different from the preceding entry, and had a fresh appearance, yet it is not shown that it did not have the same appearance on the day of the trial, nine years later. The incomplete, negative and inferential character of this evidence carries with it such a small degree of probative force, as against the four confident witnesses who were in the best situation to know the exact facts produced by appellee, that the writer is led to believe that the trial judge was fully justified in directing the verdict in favor of the plaintiff. It seems clear to him that there was no substantive evidence in impeachment of the record of June 15, or in conflict with the case made by plaintiff, and that the question should be governed by the rule announced in *Moss* v. *Witness Printing Co.* (1878), 64 Ind. 125, 130; *Hazzard* v. *Citizens State Bank* (1880), 72 Ind. 130, 134; *James* v. *Fowler* (1883), 90 Ind. 563; *Miller* v. *White River School Tp.* (1885), 101 Ind. 503; *Wabash R. Co.* v. *Williamson* (1885), 104 Ind. 154; *Hall* v. *Durham* (1887), 109 Ind. 434; *Moore* v. *Baker* (1892), 4 Ind. App. 115, 51 Am. St. 203; 2 Elliott, Gen. Prac., §689.

6.    But the initial proposal of Fleener & Hunter was an essential part of the contract entered into June 14, and its

being spread of record before the contract was acted upon was a material matter.

7. The majority of the court are of the opinion that, notwithstanding the testimony of appellant's witness is indefinite, and therefore unsatisfactory, it amounted to some evidence from a competent witness, upon the weight of which, and credibility of the witness, appellant had the right to demand the judgment of the jury. The majority are of the opinion that the question falls within the rule announced in *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385, 388, *Messick* v. *Midland R. Co.* (1891), 128 Ind. 81, 85, *Diezi* v. *Hammond Co.* (1901), 156 Ind. 583, 588, and many others of the same class, and that taking the case from the jury was reversible error.

The judgment is therefore reversed, with instructions to grant appellant a new trial.


## ON PETITION FOR REHEARING.

PER CURIAM.—Appellee has petitioned for a rehearing in this appeal on the grounds that the court erred (1) in holding that there was evidence in the case on a material issue, on the weight and credibility of which appellant had the right to demand the judgment of the jury; (2) in holding that it was essential to show that the original proposition or contract which appears to have been entered of record by the board of commissioners on June 15, 1902, was in fact spread of record at that time; (3) in holding that the provisions of §7853 Burns 1901, §5766 R. S. 1881, are applicable and controlling; (4) in holding that the contract entered into on June 6, 1902, should have been entered of record before the parties proceeded to act thereon.

8. In support of their contention counsel for appellee refer us to the decision of this court in *Weatherhogg* v. *Board, etc.* (1902), 158 Ind. 14, to show that by the holding therein §7853, *supra,* is not applicable to cases of the char-

acter of the one at bar. They insist, therefore, that the evidence given by the witness in question to show that the contract under which Fleener & Hunter were employed by the county to perform the stipulated services was not spread of record on June 15, 1902, was not material, for the reason, as advanced, that the board of commissioners, in making the contract in question, was not required to conform to the provisions of the statute in controversy. In this contention we do not concur. If the case at bar could be said to belong to a class of cases of the character of *Weatherhogg* v. *Board, etc., supra, Hoffman* v. *Board, etc.* (1884), 96 Ind. 84, *Board, etc.,* v. *Mitchell* (1892), 131 Ind. 370, 15 L. R. A. 520, the insistence of counsel would be correct. While, in cases of the character of those last cited, it would certainly be better and more orderly for the board of commissioners, in entering into a contract with a person to perform such services for the county, to enter of record its action as taken in the matter, and also the contract relative thereto, nevertheless, there is no statutory requirement that a finding of indispensable public necessity should be entered of record, or that the contract of employment should be spread upon the records of the board in order to render the employment binding on the county. *McCabe* v. *Board, etc.* (1874), 46 Ind. 380; *Board, etc.,* v. *Rilter* (1883), 90 Ind. 362. Of course, such contract of employment is now subject to the provisions of the county reform law (§5594e1 Burns 1901, Acts 1899, p. 343, §25).

In the former appeal of this cause *(Garrigus* v. *Board, etc.* [1901], 157 Ind. 103) this court said: "We hold that §39, *supra* [§7853, *supra*], is valid, and that it was in force when the agreement with Fleener & Hunter was made; but even if we are in error in this, it will be found that this court has accorded to the county board very full powers to enter into contracts for the benefit of the property of the county, and that these powers were amply sufficient for the purposes of the agreement with Fleener & Hunter.    §5745

R. S. 1881, §7830 Burns 1894; *Hoffman* v. *Board, etc.* [1884], 96 Ind. 84; *Board, etc.,* v. *Mitchell* [1892], 131 Ind. 370." See, also, *Duncan* v. *Board, etc.* (1885), 101 Ind. 403.

By the provisions of §7853, *supra,* it is evident that the legislature intended to prohibit boards of commissioners from doing three particular things, unless they substantially complied with the requirements of said section: (1) From making any allowance "not specifically required by law to any county auditor, clerk, sheriff, assessor or treasurer, either directly or indirectly, or to any clerk, deputy, bailiff, or any employe of such officer." (2) From employing "any person to perform any duty required by law of any officer." By the words "any duty required by law of any officer" the legislature manifestly intended such current duties exacted by law of an incumbent officer, and not neglected duties which should have been performed by his predecessor in office, for, in the absence of any statutory requirement, it is not the duty of an incumbent official to discharge duties which devolved upon his predecessor. *Garrigus* v. *Board, etc., supra.* (3) From employing any person to perform any duty or service to be paid by a commission or a percentage. The section in question closes with the following provisions: "If it be found necessary, and so entered of record, to employ any person to render any service as contemplated in this section, as a public necessity, the contract for such employment shall be spread of record in said court, and, for such services rendered, the claimant shall file his account in said court ten days before the beginning of the term, and any taxpayer shall have the right to contest the claim."

In *Weatherhogg* v. *Board, etc., supra,* this court in construing the prohibition of §7853, *supra,* against the board of commissioners entering into contracts for the performance of services to be paid by commission or percentage, held that it was only applicable to employments which per-

tained to or affected the duties of public officers, and had no application to contracts by a board of commissioners employing a person to render services for the county, where such services were wholly disconnected with official duties. See, further, *Garrigus* v. *Board, etc., supra,* on page 109 of the opinion.

It will be observed that by the contract between the Board and Fleener & Hunter, the latter, for their services in making an examination of the public records, settlement sheets, vouchers, etc., in the various offices of the county for the purpose of ascertaining whether any money was due to the latter, were to be paid a percentage of fifty per cent.; or, in other words, one-half of the amount of money which they might collect for the county. It is certainly evident that under the circumstances the case at bar falls clearly within the prohibition of the statute against commission and percentage contracts. Therefore, in order to bind the county, the board in making the contract was at least required substantially to comply with the provisions of the statute.

The case of *Weatherhogg* v. *Board, etc., supra,* under the facts, is clearly distinguishable from the case now under review. In that case the services to be rendered under the contract therein between the board and one Grindle, an architect, were the preparation by the latter of plans and specifications for the building of a court-house, and superintending the construction thereof. It is true that the compensation to be paid for the services rendered by such architect was a certain fixed percentage of the cost of the court-house; but it was held in that appeal, and properly so, that such services did not come within the meaning of the statute, and hence were not subject to its prohibition.

We are constrained to hold that, by reason of the percentage which the board in this case agreed to pay Fleener & Hunter for their stipulated services, the case falls clearly and fully within the inhibition of the statute, and the board

in entering into the agreement or contract in question was required to comply with the requirements of §7853, *supra,* in order to bind the county. It follows from this view that the evidence of the witness in controversy was material, and the weight thereof was a matter to be submitted to the decision of the jury. If the compensation which the board agreed to pay Fleener & Hunter for the work to be performed had been other than a percentage or commission, a different question would be presented in this appeal.

9. It is true that the evidence in controversy may, in the main, be said to be of a negative character, and possibly the learned trial judge may have considered it of such little weight that it did not tend to rebut the evidence given by the plaintiff, and that therefore he was justified in directing a verdict. But the rule that positive testimony is of greater weight than negative can not be permitted to conflict with the general rule that the weight of negative as well as that of positive testimony must be submitted to the decision of the jury. 3 Jones, Evidence, §901; 1 Wharton, Evidence (3d ed.), §415; Starkie, Evidence (8th Am. ed.), 762, 763,

After a further consideration we are satisfied that the holding at the former hearing that the trial court erred in directing a verdict for plaintiff was correct. The petition for rehearing is, therefore, overruled.