## CITY OF RICHMOND *v.* CLIFFORD.

[No. 22,537. Filed January 9, 1914. Rehearing denied May 26, 1914.]

1. TAXATION.—*Omitted Property.—Duty of Assessor.—County and City Officials.*—It is the duty of the county assessor to search for property not listed for taxation, at least to the extent that the omissions may be disclosed by the public records of the county, and such burden does not rest upon the auditor or treasurer of

the county, nor upon the clerk or treasurer of a city affected by such omission.  p. 24.

2.  TAXATION.—*Omitted Property.—Authority of City Officials.*— Although by §10429 Burns 1914, Acts 1891 p. 199, §254, the office of city assessor and the city board of equalization is abolished, indicating the vesting of the subjects of assessments and equalization in the county officers, and though cities can, by furnishing information to the auditor or treasurer of the county, require them to act under §§10310, 10353 Burns 1914, and thus obtain the listing of omitted property for taxation, a city may nevertheless enter into a valid contract independent of the county authorities employing some one to search for and discover property that has been omitted from the city's tax duplicates.  p. 24.

3.  MUNICIPAL CORPORATIONS. — *Taxation. — Search for Omitted Property.—Liability on Contract.—Evidence.*—Where a city entered into a contract employing an investigator to search for and discover property that had been omitted from the city's tax duplicates, agreeing to pay for such services a sum equal to a certain percentage of the taxes paid into the treasury by reason of such discoveries, the city was liable in an action thereon for the compensation for causing certain property to be placed upon the duplicates, although the evidence showed that the city authorities had known of the existence of such property and had not listed same for taxation on the theory that it was not taxable within the jurisdiction, where it further appeared that after plaintiff reported such property, and the city officials refused to place it upon the duplicates, he took such steps as to cause it to be listed by the county authorities, and again reported to the city, whereupon the same was listed and the taxes collected by it. p. 25.

4.  CONTRACTS.—*Parol Evidence.—Rights of Assignee.*—Evidence showing that the parties to a contract of employment to search for and discover property omitted from the tax duplicates did not intend that it should include the listing of certain omitted property of which the officials had knowledge, could not affect the rights of an assignee of the contract to compensation in causing such property to be listed, where the contract was broad enough to include same and assigned to him without any notice other than its terms.  p. 27.

5.  TAXATION.—*Discovery of Property.—Contract.—"Omitted Property".*—A contract of employment to "search for and discover property that has been secreted and omitted from the tax duplicate", is none the less a contract for the discovery of omitted property, whether omitted through misconception of the law, or by secretion, and authorizes a recovery for services rendered in causing the listing of omitted property of which the officials had

prior knowledge, but which they had not taxed in the belief that it was not taxable, where the same was in fact taxable, and from a consideration of the whole instrument the purpose is apparent to have all taxable property taxed.  p. 28.

From Hancock Circuit Court; *Will M. Sparks,* Special Judge.

Action by Fremont Clifford against the City of Richmond. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Alonzo M. Gardner, Cook & Cook, Frederick G. White, Wilfred Jessup* and *William A. Bond,* for appellant.

*Sylvester Meek, Jackson & Sample* and *Reuben Conner,* for appellee.

MYERS, J.—This is an appeal from a judgment rendered against appellant in favor of appellee, upon a contract for searching for, discovering and reporting for extension upon its tax duplicate, alleged omitted taxes upon a percentage basis.

The errors assigned arise upon exceptions to the conclusions of law stated, upon the facts found, and in overruling the motion for a new trial.  The findings of fact are in their material parts as follows:  One Morrison was, from the year 1880, to the time of his death, in August, 1893, a resident of the city of Richmond, county of Wayne.  From January 1, 1884, to August 12, 1893, the date of his death, Morrison was the owner of 1,660 shares of the capital stock of the Morrison-Plummer Drug Company, a private corporation of the state of Illinois, and during all of that time was doing business in Chicago, Illinois.  Said shares of stock were of the par value of $166,000.  In each of said years, from 1884 to 1893 inclusive, said Morrison was, as such resident of the city of Richmond, assessed for taxation, and in each of said years signed and swore to an assessment list in the form prescribed by the statutes of Indiana; at no time during his life did said Morrison give any statement of his ownership of said stock in

any assessment list of his property, neither was said stock nor any part thereof, by any officer, ever placed on the tax duplicates of Wayne County or of the city of Richmond, during the lifetime of Morrison; Morrison never paid any taxes to the city of Richmond on said stock in said corporation, during his lifetime. The value of said stock was $166,000 during all of said time said Morrison owned it. Morrison died testate, and one Hibbard was named in his will as executor thereof, and duly qualified and acted as executor of said will, and on October 29, 1893, duly filed with the clerk of the circuit court of Wayne County, an inventory and appraisement of the estate of said Morrison, and in said inventory, said stock in said drug company was duly inventoried and appraised at its par value, to wit, $166,000. On April 8, 1894, said executor made, signed and swore to an assessment list as such executor of said will before the township assessor in the city of Richmond, in which he wholly failed to list or report said stock in said corporation. On May 24, 1895, the said executor made, signed and swore to an assessment list before the township assessor in said city of Richmond, in which, in response to the interrogatory printed in said list, as follows: "8. All shares of stock in corporations formed outside of this state", he made the following answer: "$166,000. This stock pays tax in Illinois, and should not be taxed here." That at said time, said executor held said stock as such executor. That previous to July 1, 1897, said stock had never been assessed for taxation in the county of Wayne, nor in said city of Richmond, against said Morrison, his executors or legatees, nor did said stock prior to July 1, 1897, appear upon the tax duplicates of the county of, Wayne, or of said city, against said Morrison, or his executor or legatees, or heirs, or anyone else, and that prior to the first day of July, 1897, the appellant, the city of Richmond, had never collected any taxes on said stock. At a meeting of the common council of the city of Richmond, April 6, 1896, the committee on finance reported a proposal and contract

from William G. Young, for the discovery of omitted city taxables, and recommended the acceptance thereof, as follows:

"To his Honor and Members of the Council: Gentlemen: I propose to discover omitted taxables such as monies, notes, bonds, stocks, etc., located in this city and other counties that are taxable in this county, and report my discoveries to the clerk of this city for assessment and collection of the taxes thereon for a sum equal to twenty per cent of the taxes collected, no money to be paid to me until the taxes so discovered above are paid into the city treasury. Respectfully yours, Wm. G. Young."

followed by a resolution of the council that the following contract in form be approved.

"This agreement, made and entered into by and between the council of the city of Richmond, in Wayne County, and State of Indiana, and William G. Young, Witnesseth: That by this contract said William G. Young is employed by this council to make search for, and discover property that has been secreted and omitted from the tax duplicate of said city. Said discoveries of secreted and omitted property shall be by said William G. Young reported to the clerk of said city, and by him entered upon the tax duplicate in the hands of the city treasurer and at the same time said treasurer shall be charged with the taxes so entered upon the duplicate. For the services rendered by the said Young under this contract it is agreed that he, the said Young, shall receive a sum equal to twenty per cent of the taxes collected by reason of said discoveries and actually paid into the treasury. Payment to be made upon the warrant properly issued upon the showing by the said treasurer that he has collected such taxes by reason of the discovery aforesaid and by virtue of this contract. But in no case shall percentage be deemed due or owing until the taxes have actually been paid into the city treasury. This contract to continue and be in force for a period of one year from date. Dated at Richmond, this 6th day of April 1896."

On June 2, 1896, Young assigned to the plaintiff, all his right, title and interest in said written contract, which assignment was endorsed on the margin of the record of said

contract, in the records of defendant, in the office of its clerk in the words and figures as follows, to wit:

"For value received, I hereby assign and transfer all my right, title and interest in and to the within contract to Fremont Clifford, this 2nd day of June, 1896.
                              (Signed)   Wm. G. Young.
Attest:
    Jos. H. Winder,
        City Clerk."

On April 15, 1897, the common council extended the contract with appellee for the period of one year from April 6, 1897. On June 12, 1897, plaintiff filed with the city clerk of appellant, and in the city clerk's office of the appellant, a written report or information, notifying said clerk and said city of Richmond in substance, that the said Morrison, a former resident of the city of Richmond, Wayne County, Indiana, and his estate after his death, had owned and held during the years from 1884 to 1895, both inclusive, $166,000 par value of the capital stock of the Morrison-Plummer Drug Company, a private corporation of the city of Chicago, state of Illinois; that said capital stock was subject to taxation by said city of Richmond for each and all of said years, and that said capital stock had not been assessed for taxation, and had been wholly omitted from the tax duplicates of the city for each and all of said years. On November 15, 1897, the common council passed a resolution compromising and settling the tax claim at the sum of $2,000 for all taxes against the Morrison property, pursuant to which action the city clerk extended taxes on the tax duplicate of the city apportioned to the various years from 1885 to 1895, both inclusive, in the aggregate sum of $2,000, which the executor in 1897 paid. In the year 1906, the clerk of said city ignored said pretended compromise settlement, and entered an additional assessment for taxation of said capital stock upon the tax duplicate of 1906, of said city, for each of said years from 1885 to 1895, both inclusive, aggregating $839,796, and ex-

tended the tax aggregating $8,607.96. In the year 1907, and after said additional assessment was made, and the tax extended thereon, said additional tax of $8,607.96 was paid to said city. That after the tax of $2,000 was paid, as hereinbefore stated, and before the bringing of this suit, the plaintiff demanded of said city that it pay him twenty per cent of said $2,000 but the defendant refused to pay the same to the plaintiff, and the plaintiff has never received his twenty per cent commission, or any part thereof, on said $2,000, or on said $8,607.96. Upon these findings the court concluded that appellee should recover $400, with interest at the rate of six per cent from April 5, 1904, the date the action was begun, and $1,721.50 with six per cent interest from February 24, 1908, when the supplemental complaint was filed. The judgment was for $2,636.36, with interest from June 16, 1911.

The same contract here involved, was involved in *City of Richmond* v. *Dickinson* (1900), 155 Ind. 345, 58 N. E. 260, but it is the first contention of appellant that the court's attention was not called in that case to the fact that by the act of 1891, then under consideration, provision was, for the first time, made for a county assessor, whose duty it was to search for omitted property, and through his efforts, omitted property first gets on the tax duplicate of the county, and then on the city duplicate, and that the same fact was overlooked so far as county assessors were concerned in *Fleener* v. *Litsey* (1903), 30 Ind. App. 399, 66 N. E. 82, and that the sole authority as to searching the records for omitted property is the county assessor's, and that no other person can be paid from the public funds for searching for omitted property. The second proposition is, that as the list for taxation as furnished by county auditors to cities, is the sole authority and basis under §254, Acts 1891 p. 199, §10429 Burns 1914, for taxation by cities, and no provision is made by statute for cities to authorize employment independently to search for omitted property, the authority does not exist to

pay for such service, and the contract is therefore invalid. Third, that if there is any authority for placing omitted property on the city tax duplicate, except through the agency of the county authorities, under §254, *supra,* then under that section such service must be rendered by city clerks and city treasurers.

Conceding without determining whether the attention of the court was directed in the case of *City of Richmond* v. *Dickinson, supra,* to the fact that the selection of 1. county assessors whose duty it is to search for omitted taxable property by the act of 1891, when the office of city assessor was abolished, it must be apparent from the opinion that it was determined, that county auditors, county treasurers, city clerks or city treasurers were not required to search for omitted property, and we have since held that that duty is imposed on county assessors, at least to the extent that the fact of omission is disclosed by the public records of his county (*State, ex rel.* v. *Goldthait* [1909], 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 737) so that the duties of city clerks and city treasurers are not enlarged beyond the corresponding duties of the county auditor and county treasurer, as determined by that case.

The second proposition of appellant has much plausibility and reason to support it, in the fact that the taxing law of 1891 (Acts 1891 p. 199) aimed at a uniform system 2. of assessments, as applied to counties and cities, coupled with the abolition of the offices of city assessor and city boards of equalization, indicating the vesting of the subjects of assessments and equalization, in the county officers. Suppose, however, that the proper county authority fails or refuses to act, or *search* for and report omitted property, must the city in order to obtain a proper taxation of all the taxable property act through the county assessor, or may it employ agents for that purpose? It is evident that to attempt to mandate the assessor would be unavailing, because the particular duty would not be sufficiently certain in

law.   To prosecute him criminally would add nothing to the
tax duplicate.   Doubtless a city can, by furnishing informa-
tion to the county auditor or county treasurer require them
to act, under §§10310, 10353 Burns 1908, Acts 1897 p. 141,
Acts 1891 p. 199, and through that method get omitted prop-
erty on the duplicate, but the question is, can it act inde-
pendently.   Business prudence may suggest that it should,
in the interest of economy and uniformity.   But it must be
borne in mind that while uniformity of action in assessments
for taxes may be desirable and intended, the prudential or
administrative affairs of cities, as voluntary corporations, as
applied to their contractual relations, are committed to their
officers, as distinguished from their legislative powers, and
are not the subject of control, within the express, or fairly or
necessarily implied administrative powers (*Grand Trunk,
etc., R. Co.* v. *City of South Bend* [1910], 174 Ind. 203, 218,
89 N. E. 885, 91 N. E. 809, 36 L. R. A. [N. S.] 850) and upon
the findings made, we are constrained to the conclusion that
the contract is not invalid.

On the motion for a new trial, it appears by the evidence,
that the fact that the particular stock in question was held by
Mr. Morrison, and had not been taxed, was well known
to the city officers before the contract was made, and
had been the subject of frequent consideration by
them, but they labored under the erroneous belief that it was
not subject to taxation.   It further appears that about the
time Young obtained the contract with appellant, one Lacey
also obtained a similar contract with the board of commis-
sioners of Wayne County, and the latter and appellee worked
together in the matter.   They determined between them-
selves, that appellee should first file the information as to the
omitted property with the city clerk of appellant, which he
did.   The city clerk refused to put the property on the tax
duplicate, and in order to get the property on the county
duplicate, they then determined that Lacey should file a like
statement or information with the county auditor, and he did

so. The county board of review refused to have the stock placed on the duplicate, and Lacey with the aid of appellee, appealed to the State Board of Tax Commissioners, which board ordered the property placed on the duplicate at a valuation of $150,000 for each of the years involved. After this ruling had been obtained, appellee on August 23, 1897, filed his supplemental written information with the city clerk, showing the action of the State commission, and the assessment, and taxes thereon were extended on the city duplicate, and the taxes paid. It does not appear from this record that the taxes were ever placed on the county duplicate. That it was done may be known from the history of the case of *Board, etc.* v. *Dickinson* (1900), 153 Ind. 682, 53 N. E. 929, involving the Lacey contract. It thus appears, that notice of the claim was filed by appellee as early as June 12, 1897, and it further appears that the contention was not over the question of secreted property, but whether it was taxable; that it was omitted from the tax duplicate was not questioned, and but for the action of appellee and Lacey, it would not, at that time at least, have been put on any duplicate, and as the question was whether it was omitted taxable property, it was immaterial whether the omission arose from an erroneous view of the law, or from secretion, and being brought to attention. The language of the contract covering ''secreted and omitted'' property is broad, and the evidence discloses that the contract was intended to embrace other cases of perhaps secreted property. The property in this case was not secreted, but it was omitted, and it was placed on the tax duplicate through the efforts of appellee.

Appellant concedes that §4 of the act of 1891 (Acts 1891 p. 199), gave rise to ambiguity as to whether such stock is taxable in Indiana. It was not the duty of county auditors or county treasurers, and of city clerks or city treasurers to *search* for omitted property, but it was their duty when informed, to investigate and place it upon the duplicate, and

they refused to do so, as the evidence shows, and presumably, certainly as to the city officers, they knew the facts at and before the contract was made. It is manifest upon the whole record, that appellee was compelled to procure a legal test on the question, which he did, and doubtless that was the purpose when the contract was made, in view of the attitude of the taxing officers. Nor would the taxes have been placed on the county duplicate, unless on appeal, the proper taxing officers had decreed the property to be taxable, but that resulted not from any action of the officers of the county or city, hence there could, and would have been no transcription to be made from the auditor's records to the city clerk's records, except for the course pursued by appellee and Lacey.

If the city in its business discretion had desired to await action by the county authorities in this matter, it might have done so, but it did not. That it could have procured the same result by mandamus, and whether it was good or bad business judgment is likewise immaterial here. The answer to it all is, that it pursued a course it was authorized to pursue.

It is next urged that the contract did not include the Morrison stock, and that it was expressly excluded in the 4. agreement with Young, the contention being on the fact that several councilmen testified to that effect, as to conversations held with Young before the contract was executed, and the further claim that appellee was a silent partner with Young at the time. Appellant had the benefit of the evidence on that point, whether correctly or incorrectly we do not decide, but the evidence fails to show any connection of appellee with the contract prior to the time it was made, and Young was dead at the time of the trial. It was assigned for value to appellee without any notice other than its terms, and the question must rest there.

We perceive no error in the record, and the judgment is affirmed.

Morris, J., did not participate in the decision in this cause.

## ON PETITION FOR REHEARING.

MYERS, J.—The learned counsel for appellant on petition for a rehearing insist very earnestly, that the court in its original opinion put too broad a construction on the contract in question, as to its subject-matter, for the reason claimed, that as the existence of the property was well known to the council and taxing officers, it could not have been intended to embrace this property, as secreted and omitted, or to search for and discover it as such, because it was not secreted, and no search was necessary. It will be noted that the original proposition was to discover omitted property, and place it on the tax duplicate. The council in its acceptance changed the phraseology of the proposition as made, as one to "search for and discover property that has been secreted and omitted from the tax duplicate", but this language does not change the contract, as one for the discovery of omitted property, whether the omission arose from a misconception of the law, or from secretion. Appellant's contention is plausible that under the circumstances disclosed it could only embrace property that should be discovered, which had been both secreted and omitted, but taking the whole scope, and purpose of the agreement into consideration, the purpose was to have all the taxable property of the city taxed. It could not be secreted property, without being omitted; but it could be, and was omitted property, without being secreted; but the object was to have all omitted property taxed, and if through an erroneous view of the law it had been omitted, it was omitted, just as much as if it had been secreted, and the search and discovery required and undertaken, embraced discovery and search as matters of law, as well as of fact; it therefore embraced secreted property omitted for that reason, and property not secreted in fact, but omitted by erroneous construction of the law.

The erroneous construction insisted on by appellant, that it could only apply to this search for, and discovery of

property secreted in fact, and therefore omitted, would exclude property omitted because of erroneous construction of the law; but the omission itself which was the material thing, might be, and in fact was as much a discovery that it was taxable, as it would have been had it been a pure question of the discovery, in fact, of the existence of the property, and looking through the form to the substance of the contract, its object and purpose, we think we did not misapprehend its true construction. The petition for a rehearing is denied.

NOTE.—Reported in 103 N. E. 789; 105 N. E. 385. See, also, under (1, 2) 37 Cyc. 982; (3, 5) 28 Cyc. 679; (4) 17 Cyc. 753.