CLARK ET AL. v. STATE OF INDIANA, EX REL. LEE.

[No. 23,059. Filed December 13, 1917. Rehearing denied March 19, 1918.]

1. APPEAL.— Record.— Transcript.— Sufficiency.— Where appellants filed a praecipe for a partial transcript, which was issued and certified, but dismissed their appeal, withdrew the transcript and, after inserting a new assignment of errors to which another party was made an appellee, refiled the same transcript and caused notice to be issued and served upon all the appellees and upon the clerk of the circuit court, the notice to the clerk in the second appeal was not necessary and did not operate as a praecipe for a complete transcript as required by §690 Burns 1914, §649 R. S. 1881, in the absence of a request for a partial transcript, since the second appeal was governed by the second provision of §681 Burns 1914, §640 R. S. 1881, which contemplates that a party having a transcript may file the same with the clerk of the Supreme Court whose duty it is to issue notice to only the appellees. p. 280.

2. APPEAL.—Transcript.—Time for Filing.—The filing of a transcript within 180 days from the date of the judgment was in accordance with the statute governing appeals, though the time was more than 180 days from the announcement of the court's findings and conclusions. p. 281.

3. APPEAL.—Parties.—In a suit for the benefit of the county against a treasurer and his deputy for money alleged to have been wrongfully paid to the deputy, where the board of county

commissioners was made a party on its failure to sue and the judgment was in its favor, the individuals who were commissioners during the period in controversy need not be made parties to the appeal, since a reversal could not affect them. p. 281.

4. TAXATION.—*Discovering Dropped Taxes.—Powers of Board.—* The board of county commissioners has power to contract to pay for discovering information leading to the collection of dropped taxes, provided that the contract was not with a county officer whose duty it was to discover such information, that an indispensable public necessity existed for making the contract, and that an appropriation by the county council existed to pay the compensation agreed upon. p. 281.

5. TRIAL.— *Findings.— Failure to Find.— Effect.—* Where the court fails to make a finding upon a fact alleged in the complaint, the failure to find amounts to a finding against the plaintiff. p. 282.

6. TAXATION.—*Discovering Dropped Taxes.—Powers of Board.* —A contract by a board of commissioners for the discovery of dropped taxes, though void at the time of its execution for want of an appropriation, was validated by the curative act of 1909, Acts 1909 p. 20. p. 282.

7. TAXATION.—*Powers of Board.—*Where the board of commissioners found and entered of record as a fact that an indispensable public necessity existed for the execution of a contract to pay for the discovery of dropped taxes and no direct attack was made upon this action of the board, the plaintiff could not in a collateral proceeding attack such action. p. 283.

8. TRIAL.—*Findings.—Conformity to Issue.—*Where there was no proper allegation or issue made or tried as to the validity of an order of a board of commissioners in entering into a contract on the grounds that an indispensable public necessity existed for its execution, there could not properly be a finding of fact on the question whether such indispensable public necessity existed. p. 283.

9. TAXATION.—*Discovering Dropped Taxes.—Statutes.—*Under §§119, 120, 121 of the Fee and Salary Act (§§7332, 7333, 7334 Burns 1914, Acts 1895 p. 319, as amended, Acts 1897 p. 171) and §§159, 226, 240 of the General Taxation Act (§§10330, 10397, 10411 Burns 1914, Acts 1891 p. 199, as amended, Acts 1903 p. 49) prescribing the duties of the county treasurer in the collection of delinquent taxes, where the treasurer has been credited with taxes that have once been listed as dropped, he need not search unremittingly without any clue as to the existence of property liable, as the treasurer when credited with dropped taxes is under no duty to collect until he has

information of an opportunity and has procured a transfer by the auditor from the insolvent record to the current duplicate.   pp. 283, 285.

10.   TAXATION.—*Discovering Dropped Taxes.—Power of Commissioners.*—It is not the duty of a county officer to search the records and perform the uncompleted duties of his predecessors unless required by statute; hence, a contract executed in good faith by the board of commissioners to pay a deputy treasurer for the discovery of dropped taxes and of property liable therefor was valid, where the facts showed that none of the taxes collected under the contract were charged on any duplicate at the time the same were delivered to the treasurer but appeared only on the insolvent record.   p. 286.

11.   TAXATION.—*Discovering Dropped Taxes.—Duty of Treasurer.*—While it is the duty of the treasurer to collect taxes, and another may not be paid for collecting, it is within the power of the board of commissioners to employ another to furnish information to enable the treasurer to collect them. p. 287.

From the Delaware Circuit Court; *William H. Eichhorn,* Special Judge.

Action by the State of Indiana, on relation of John D. Lee and others, against Ralph H. Clark and others. From a judgment in part for the relator, the defendants Clark and Mansfield appeal.   *Reversed.*

*Ray W. Clark, R. W. Sprague* and *W. A. Thompson, Miller, Dailey & Thompson* and *H. H. Orr,* for appellants.

*R. S. Gregory, Francis A. Shaw, C. L. Medsker, J. Earl Fouts,* and *Thomas E. Bracken.*

HARVEY, J.—The relator sued to recover, for the county's benefit, money alleged to have been wrongfully paid by the county treasurer to defendant Mansfield. The amended complaint alleges in substance: That defendant Clark was the treasurer of Delaware county, and defendant Mansfield was his deputy; that in December, 1908, the commissioners of the county contracted with said Mansfield, then deputy treasurer, to pay Mansfield certain per cents. of the amount of "dropped taxes"

collected during the ensuing year, by reason of the discovery by Mansfield of the delinquent parties and of property liable for the payment of said dropped taxes; that a similar contract was made in the years of 1909 and 1910 respectively; that the county council had made no appropriation to cover the amounts so to be paid under said contracts; that said "dropped taxes" were delinquent taxes which had been assessed upon property taxable in said county, and which were shown on the tax records of said county, but which for various reasons had not been collected, though legally owing and due and which in settlements between the treasurer and auditor had been credited to the treasurer as uncollectable and thereupon dropped from the charges against said treasurer, though they remained enforceable by proper steps in event collection could, in the future, be made; that when so dropped the taxes were not carried forward to the later tax duplicates; that the claims filed by Mansfield and paid by the county amounted under the first contract to $2,928.46, under the second to $1,330.95 and under the third to $732.17; that said amounts were unlawfully paid by said treasurer to Mansfield upon claims approved by said treasurer, Clark, allowed by the commissioners, and upon warrants drawn by the auditor of the county; that relator duly demanded of the commissioners of the county that they sue to recover said sums; that the commissioners for more than sixty days had failed so to do; that relator sues for the use and benefit of the county; that he has incurred expense and liability for the services of attorneys incident to this action and preparation therefor. The said board of commissioners is made defendant that it may have knowledge of the suit and receipt for the money to be recovered; and the county auditor and each individual who was a county commissioner during the term of said contracts were made defendants. That

each and all of the commissioners acting as such during said three years and the auditor and treasurer of the county knew of the illegality of the contracts, and of the warrants and of the payments at the time the same were made or issued; that said treasurer Clark conspired with and assisted his deputy, Mansfield, in the procurement of the payments.

Motions of the defendants to make the complaint more specific and for a jury trial were overruled. Defendants' demurrers to the complaint were overruled. Defendants filed thirteen paragraphs of answer. Demurrers were sustained to seven of them. The issues formed by the remaining answers, including a general denial, were tried by the court. Special findings and conclusions were made and entered. Defendants Clark and Mansfield excepted to each conclusion of law. Judgment was rendered against said Clark and said Mansfield for the sum of $2,928.46 and interest aggregating $3,894.81, for the sum of $1,000 as plaintiff's attorney fee and for plaintiff's incidental expenses and his costs, and judgment was rendered in favor of each of the other defendants against relator for costs. The motions of Clark and Mansfield for a new trial were overruled. Each of the above rulings against appellants is assigned as error.

This is the second appeal of this cause, the first having been dismissed by appellants. Appellants withdrew the transcript from the records of this court and,

1. having inserted therein a new assignment of errors wherein the board of commissioners of the county was made an appellee, appellants refiled the same transcript and caused notice to be issued and served upon all the appellees named and upon the then clerk of Delaware county. Appellees move the dismissal of this appeal because the transcript is of only a part of the record, whereas upon notice to the then

clerk, Bowden, it was, they allege, his duty, in the absence of a praecipe requesting a partial transcript, to make a complete transcript. §690 Burns 1914, §649 R. S. 1881. One Mansfield was county clerk at the time of the original appeal. Appellants filed with him, as the then clerk, a praecipe for a partial transcript. He made the transcript asked for, the same was properly certified, and appellants, having and owning the same, had no occasion to buy another for the second appeal. This appeal was evidently taken under the second provision in §681 Burns 1914, §640 R. S. 1881, which contemplates that an appellant having a transcript may file the same here and upon so doing need notify only the appellees. The notice of this second appeal issued to county clerk Bowden was not necessary and did not operate as a praecipe.

Another ground of the motion to dismiss is that the transcript was not filed within 180 days from the announcement of the court's findings and conclusions. 2. The same was filed within 180 days from the date of the judgment. That is the statutory requirement.

A further ground is that the individuals who were county commissioners during the period in controversy and who were parties defendant below are not 3. made parties to this appeal. Judgment was rendered below in favor of these parties. A reversal of judgment against the treasurer and Mansfield, appellants, cannot affect these defendants. They need not be parties here. The motion to dismiss is overruled.

An understanding of the powers and duties of the board of commissioners, of the county auditor, and of the county treasurer will furnish basis for an intelligent ruling on some of the alleged errors and 4. will show that other alleged errors need not, in view of our conclusion herein, be considered. The board

had power to contract to pay for discovering and furnishing the county treasurer information leading to the collection of delinquent or dropped taxes, provided: First, the contract was not with a county officer whose duty it was to discover such information or with a deputy of such officer; and provided, secondly, an indispensable public necessity existed for making such a contract; and provided, thirdly, an appropriation by the county council existed for the payment of the compensation agreed upon by the board for such information. *City of Richmond* v. *Dickinson* (1900), 155 Ind. 345, 58 N. E. 260; *Board, etc.* v. *Workman* (1916), 186 Ind. 280, 116 N. E. 83; *McCaslin* v. *City of Greencastle* (1913), 56 Ind. App. 54, 104 N. E. 871; *State, ex rel.* v. *Goldthait* (1908), 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 737; *City of Richmond* v. *Clifford* (1914), 182 Ind. 17, 103 N. E. 789, 105 N. E. 385; *Board, etc.* v. *Garrigus* (1904), 164 Ind. 589, 73 N. E. 82, 74 N. E. 249; *Johnson* v. *Board, etc.* (1886), 107 Ind. 15, 8 N. E. 1; *Stembel* v. *Bell* (1903), 161 Ind. 323, 68 N. E. 589.

The court does not find that defendant Mansfield was a deputy treasurer. This fact alleged in the complaint is therefore found against the plaintiff. The court did not find as a fact that there was appropriated by the county council any sum for the year 1909 to cover said contract with Mansfield for that year. Therefore said contract was, for want of appropriation, void at the time it was entered into, to wit, December 11, 1908. As to this point, however, the contract was rendered valid by the curative act which was approved February 18, 1909. Acts 1909 p. 20. *Johnson* v. *Board, etc., supra; Stembel* v. *Bell, supra; Board, etc.* v. *Workman, supra.* This overcomes the allegation in the complaint that there was no such appropriation.

The board found it to be a fact that an indispensable

public necessity existed for the making of this contract
and entered its finding of this fact of record, and
7.  thereupon assumed the power and jurisdiction to
enter into such a contract, and recited this fact
in the contract.  The plaintiff has not sought in any di-
rect attack upon this action of the board to set it aside
or have it declared void.  The plaintiff cannot in this
proceeding, which is entirely collateral, attack said
order. *Board, etc.* v. *Mitchell* (1892), 131 Ind. 370, 30 N.
E. 409, 15 L. R. A. 520; *Nichols* v. *Howe* (1856), 7 Ind.
506; *Porter* v. *Stout* (1880), 73 Ind. 3; *Adams* v. *Har-
rington* (1887), 114 Ind. 66, 14 N. E. 603; *Gold* v. *Pitts-
burgh, etc., R. Co.* (1899), 153 Ind. 232, 53 N. E. 285;
*Hoffman* v. *Board, etc.* (1884), 96 Ind. 84.

There was no proper allegation or issue made or tried
herein as to the validity of said order; hence there
could not properly be a finding of fact as to
8.  whether such indispensable necessity existed, and
finding No. 33 on this subject is not considered
as effective herein.  *Gardner* v. *Case* (1887), 111 Ind.
494, 13 N. E. 36.  It must be held that an indispensable
public necessity existed supporting said contract.

The alleged contract was valid, therefore, unless it
was the duty, under the law, of the county treasurer to
search for information of the character con-
9.  tracted for.  What were the duties of the treas-
urer?  Section 7332 Burns 1914, (§119, Fee and
Salary Act, Acts 1895 p. 319, as amended, Acts 1897 p.
171) and §10397 Burns 1914, (§226, General Taxation
Act, Acts 1891 p. 199, as amended, Acts 1903 p. 49)
provide in substance that after the spring taxpaying
date the auditor and treasurer shall make a list of de-
linquents; that this list properly verified by the treas-
urer and certified by the auditor shall be effective as an
execution in the hands of the treasurer; that he shall
make demand on each resident delinquent and levy

when necessary on any property found.   The treasurer
is to stand charged with the delinquencies so listed.
That he shall make return thereon as to each item and
his return shall be *prima facie* evidence of the facts
therein stated.   The treasurer shall be allowed six per
cent. of delinquencies collected.   Section 7333 (Fee and
Salary Act, *supra*) provides, as an incentive to collec-
tion, that the auditor shall not credit the treasurer with
uncollected delinquencies unless the treasurer shall show
by a verified return that he has diligently sought for and
been unable to find property, and that if the treasurer
fails to make demand upon any resident, or fails to levy
and sell, when property can be found in the county, he
shall be liable on his bond at the suit of a taxpayer for
the uncollected delinquency and ten per cent. damages
thereon.   Section 7334, *supra*, provides further that he
shall receive none of his salary until the county com-
missioners are satisfied that the above and all other
laws requiring the treasurer to collect delinquent taxes
have been fully complied with.   Section 10330 Burns
1914 (General Taxation Act, *supra*) provides that,
whenever the treasurer has reason to believe that any
person charged with tax is about to remove from the
county without payment, he may levy upon and sell
personal property, and it is made his duty to *levy* and
*collect* all delinquent taxes whether they be charged
upon a current year's duplicate or otherwise as well
before as after his return and settlement for a current
year's taxes.   Section 10411 Burns 1914, *supra*, pro-
vides that, annually in the month of November, before
the delinquencies of a former year or years are carried
to a current year's duplicate, it shall be the duty of the
auditor and treasurer "to review and carefully examine
the list of delinquencies," and "all such delinquencies
as by reason of removal from the state, leaving no prop-
erty, or dying, leaving no property, and all delinquencies

which, in the judgment of said auditor and treasurer, from any other cause, there is no reasonable probability of being collected, shall be omitted from the current year's duplicate; such omissions shall be entered by the auditor upon a record to be known as the insolvent record and shall be kept in the office of the county treasurer as a public record." This section designates the taxes listed in this insolvent record as "dropped taxes" and provides that the aggregate amount thereof shall be stated in the final entry thereof each year and "such treasurer shall be *relieved* of the charge of the aggregate amount * * * thus dropped each year"; and *thereafter* when it *appears* that any of such dropped taxes can be collected he shall notify the county auditor and "it shall be the duty of such auditor to restore such person's dropped taxes to the current tax duplicate"; and "it shall be the duty of such county treasurer to *collect* the same as other delinquent taxes are collected."

This lengthy review of the statutes relating to the treasurer's duties is only justified by the assertion so constantly made and acted upon that the treasurer's duties are so broad and continuous that under no circumstances can the county pay another for information upon which the treasurer and auditor can act and collect, but that it is the treasurer's duty to unremittingly search, although he have no reasonable clue to the existence of property liable. The statutes do not so provide, nor do our decisions so hold. Dropped taxes are, of course, delinquent taxes and taxes carried to the insolvent record are lost, so far as any present human effort is concerned. The treasurer is credited with the same and thereafter is under no duty unless information comes to him of opportunity to collect. When so informed he is still not empowered or required to collect, but his first duty is to procure a

transfer by the auditor of the same from the insolvent record to the current duplicate and thereupon and not until then is it made his duty to collect dropped taxes. Lack of information, or, in other words, the information the auditor and treasurer had, caused the taxes to be dropped. Information is the element essential to creation of an obligation upon the treasurer to act as to dropped taxes and the county officers would be remiss in their duties did they not acquire, for a reasonable compensation if demanded, information from one who knows or has ability and opportunity to learn. *City of Richmond* v. *Dickinson, supra; Fleener* v. *Litsey* (1902), 30 Ind. App. 399, 66 N. E. 82.

Of course, neither a treasurer nor his deputy could properly be paid for such information, because the information of such officers belongs to the county without other compensation than the officer's salary, and because of their duty to use their information for the county's benefit. He who has such information may sell it and he who needs may, if otherwise unable to acquire, buy. An indispensable public necessity may well exist under such circumstances and the county commissioners be justified in finding and acting on the same. *Board, etc.* v. *Weeks* (1892), 130 Ind. 162, 29 N. E. 776; *City of Richmond* v. *Dickinson, supra.*

The construction here placed on said statutes is consistent with the holding of several of our decisions to the effect that county officers have no duty to search records of their predecessors in office or to perform uncompleted duties of their predecessors, unless by statute so required. *City of Richmond* v. *Dickinson, supra; Garrigus* v. *Board, etc.* (1901), 157 Ind. 103, 60 N. E. 948; *State* v. *Atkisson* (1861), 17 Ind. 26; *Reeder* v. *State, ex rel.* (1884), 98 Ind. 114. The decisions in *City of Fort Wayne* v. *Lehr* (1882), 88 Ind. 62, and *Miller* v. *Embree* (1882), 88 Ind. 33, are cited

to the effect that it is the duty of the treasurer 11. to collect and that another may not be paid for collecting. This may be conceded. The furnishing of information to enable the treasurer to collect is, however, another matter.

The court found as a fact that none of the taxes collected under the contract in question were charged on any duplicate at the time the same was delivered to treasurer Clark—in effect, a finding that all such taxes had been theretofore dropped—in other words, credited to some former treasurer, and that they appeared only on the insolvent record when delivered to Clark, as treasurer.

The court does not find that there was a conspiracy between the treasurer and Mansfield as to the furnishing of such information; on the other hand, the court finds that the treasurer and the board acted in good faith, believing that said contract and all transactions thereunder were valid.

The decision is contrary to law. The judgment appealed from is reversed, and the court directed to grant the motion for a new trial.

NOTE.—Reported in 117 N. E. 965.