## SNYDER *v.* SNYDER.

[No. 10,817.   Filed June 2, 1921.]

1. HUSBAND AND WIFE.—*Alienation of Affections.—Evidence.—Sufficiency.*—In a wife's action for the alienation of her husband's affections, evidence *held* insufficient to sustain the allegations of the complaint.   p. 13.

2. PLEADING.—*Theory of Action.*—A plaintiff is required to present his case upon a definite theory, and must stand or fall by the case stated in the complaint.   p. 13.

3. HUSBAND AND WIFE.—*Alienation of Affections.—Evidence.—Conversations Between Husband and Wife.*—In a wife's action for alienation of her husband's affections, testimony by the wife as to conversations with the husband is admissible only for the purpose of showing the state of affections of the husband toward plaintiff, and cannot be considered as proof of any wrongful conduct on the part of defendant.   p. 13.

4. EVIDENCE.—*Admissibility.—Testimony by Witness as to Mental Attitude.*—In a wife's action against her husband's mother for the alienation of his affections, where a witness testified that he had rented a farm to plaintiff's intended husband, at which time the witness was informed of the approaching marriage, and that the rental agreement was later countermanded, a question, "Did the countermanding of the leasing of your place to him have anything to do with his mother's attitude toward his marriage?" to which the witness answered "Yes, sir," was objectionable as being leading and suggestive, and the answer thereto was merely an expression of the mental attitude of the witness which did not bind defendant, and which should not have been heard in evidence.   p. 14.

5. HUSBAND AND WIFE.—*Alienation of Husband's Affection.—Conversations of Husband.—Admissibility.*—In a wife's action for the alienation of her husband's affection, testimony as to certain conversations between witnesses and plaintiff's husband, out of the presence and hearing of defendant, were proper, insofar as they showed the affection or want of affection that the husband had for plaintiff.   p. 14.

6. HUSBAND AND WIFE.—*Alienation of Husband's Affections.—Instructions Outside of Issues.*—In a wife's action against her

husband's mother for the alienation of his affections, the giving of a peremptory instruction that, if defendant had made false or "disapproval" remarks as to appellee's moral character in the presence of plaintiff's husband, or threatened to disinherit him if he continued to live with plaintiff, or was guilty of·any wrongful act or conduct whereby plaintiff's husband was induced to separate from her, and such acts and conduct were malicious, the verdict should be for plaintiff, was reversible error, where there was no evidence of any such remarks and because the instruction as to other acts or conduct was not limited to the charges made in the complaint.   p. 15.

7.  TRIAL.— *Instructions Outside Issues.*— In a wife's action against her husband's mother for alienation of her husband's affections, an instruction, that the verdict should be for plaintiff if defendant was "guilty of some act or conduct" inducing plaintiff's husband to separate from her, was erroneous because not limited to any act or conduct charged in the complaint. p. 15.

From Allen Superior Court; *William N. Ballou,* Judge.

Action by Lottie Snyder against Lavina Snyder. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Harry H. Hilgeman* and *Stephen A. Callahan,* for appellant.

*John H. Aiken* and *A. L. Aiken,* for appellee.

NICHOLS, J.—This was an action brought by appellee against appellant for damages for the alienation of the affections of appellee's husband.

A demurrer was sustained to the first paragraph of complaint. The case therefore proceeded to trial on the second paragraph of the complaint which is, in substance, as follows:

Lavina Snyder, appellant, is the mother of James Snyder. Appellee is his wife to whom he was united in marriage on September 26, 1916, and lived and cohabited with her until the .... day of October, 1916, and during such period of cohabitation appellee and her husband were very happily united. After said mar-

riage appellant by repeated and continuous efforts alien-
ated the affections of James Snyder for appellee in the
following manner, to wit:    Appellant threatened said
James Snyder with disinheritance if he would not leave
appellee and further refuse to live with her, and offered
and promised to reward. him with money if he would
leave appellee and reside with appellant.    Before said
marriage appellant endeavored to persuade James Sny-
der to marry one Dora Fritz but he refused to marry
her, and appellant procured said Dora Fritz, after the
said marriage to live at her home, and made the afore-
said promises and threats and persuasions to cause
James Snyder to leave his wife and live with them;
that said James Snyder without warning to appellee,
and wholly because of said threats and promises and
the presence of said Dora Fritz at the home of ap-
pellant, did leave appellee and is now and has been
living with said Dora Fritz and appellant, and he ac-
companies the said Dora Fritz to public gatherings and
generally entertains her.    The sole and only cause of
his leaving appellee and his refusal to live with her is
the wrongful influence and unfair efforts of appellant
who wilfully endeavored to and did alienate the affec-
tions of James Snyder, for his lawful wife by falsely,
unlawfully and maliciously declaring and publishing to
James Snyder and others that appellee was indecent
and immoral, whereas appellee was pure, decent and
moral and further alienated said love and affections by
said threats and promises.    That all of the aforesaid
false statements of appellant and threats and promises
were done and made unlawfully, maliciously, wrongfully
with the intent and purpose of causing said James Sny-
der to leave appellee, and to destroy his love and affec-
tion for her, and said promises, actions and threats
and wrongful, unlawful and malicious mis-statements
did destroy the love and affection of James Snyder, and

did cause James Snyder to lose his love and affections for his wife and cause him to refuse to live with her.

The jury returned a verdict for the appellee in the sum of $2,166.50. Appellant filed a motion for a new trial which was overruled, and judgment rendered in favor of appellee, from which this appeal.

The error relied upon for reversal is that the court erred in overruling the appellant's motion for a new trial, under which appellant contends that the verdict was not sustained by sufficient evidence, that it was contrary to law, that there was error committed in the introduction of evidence, and also in the giving of instructions tendered by appellee, particularly the appellee's instructions numbered 4 and 7.

On the following facts there is no dispute: Appellant's son married appellee after "keeping company" with her some years, and a few weeks after the marriage, he left her and returned to his mother's home to live; appellee's husband was farming his mother's farm for her at the time of the marriage, and there was some estrangement between them because of his neglect of the farm; appellee and appellant were not acquainted, and there was no reason for any ill will between them; the son was thirty years of age, and appellee twenty-three; at the trial, when called to the witness stand by the appellee, said son made certain charges of immorality again appellee.

The evidence viewed most favorably for appellee, as epitomized by appellant and unchallenged in appellee's brief was as follows: Appellee, while a telephone operator, overheard appellant talking to her daughter, when asked where Whit was, (appellee's husband), saying: "Up there in Arcola with that thing making soup, I suppose;" and that appellant had given her son a ninety-day's notice and that she had no sympathy for him, and told him that he could "go with that old lazy

slop at Arcola you have been hanging around with all summer," and appellee heard them making fun of her wedding pictures; that she called appellant over the phone and asked where Whit was, and appellant answered she did not know and hung up the receiver. The foregoing was appellee's testimony. Appellant had returned for taxation with her other property, an automobile that belonged to her son, Whit. On one occasion, appellant had stated to her son in the presence of Hugh Wise, referring to appellee, that she could not live there; and she said he couldn't bring her there and she didn't want him to live with her; didn't say anything on the subject of separation; met witness Dora Fritz at Snyder's and heard appellant say he had better have married Dora Fritz than appellee. It appears by Dora Fritz's evidence that she had lived in the home of appellant for eleven years. Appellant had been overheard to remark over telephone that when Whit and Lottie returned from their wedding there would be a "hot time in the old town."

The evidence in the case is voluminous, but the foregoing summary contains, as we think, a fair statement of such part thereof as is susceptible of an unfavorable interpretation against appellant; and it seems to us that it is far short of sustaining the charges against appellant that are made in the complaint. Appellant must proceed with her case upon a definite theory and she must stand or fall by the case that she has stated in her complaint; if the evidence does not sustain her charges therein she must fail, however much she may have been otherwise injured. Appellee was permitted to testify, over the objection of appellant, to certain conversations between herself and her husband. Such conversations are admissible only for the purpose of showing the state of affection of the husband toward

appellee, and the court so instructed the jury, and further instructed the jury that such conversations were not to be considered as proof of any wrongful conduct on the part of appellant. But parts of these conversations did not fall within the exceptions allowing conversations between husband and wife in alienation suits for the purpose of showing the state of the husband's affection. Where they were beyond the limits of the exceptions they should not have been heard. Ordinarily, the same rule prevails as to hearsay evidence, in alienation suits as in any other suit. *Higham* v. *Vanosdol* (1885), 101 Ind. 160; *Sivley* v. *Sivley* (1909), 96 Miss. 143.

Witness Henry A. Rockhill testified that in the summer of 1916, he rented his farm to appellee's intended husband, at which time he was informed of his approaching marriage to appellee. He was to take possession of the farm sometime in the fall, but did not because the witness countermanded the agreement. He was then permitted, over the objection of appellant, to answer the following question: "Did the countermanding of the leasing of your place to him have anything to do with his mother's attitude toward his marriage?" to which the witness answered: "Yes sir." Appellant earnestly contends that this evidence simply was an expression of the mental attitude of the witness, that it could not bind appellant, and that it was leading and suggestive. We think there is merit in each contention. The evidence should not have been heard.

Witnesses Wise and Miller were permitted, over the objection of appellant, to testify as to certain conversations which the husband had with them, respectively, out of the presence and hearing of appellant. These conversations were proper, so far as they showed the affection or want of affection that the

husband had for his wife. *Clark* v. *Clark* (1917), 187 Ind. 276, 118 N. E. 123. Any evidence that did not bear upon that question was improper and should not have been admitted.

Instruction No. 4 was a peremptory instruction for appellee, if appellant had made false or "disapproval remarks" as to appellee's moral character in the presence of appellee's husband, or threatened to disinherit him if he continued to live with appellee, or was guilty of any wrongful act or conduct, whereby such husband was induced to leave appellee, and such acts and conduct were malicious. We assume that "disapproval remarks" should have been "disapproving remarks." We find no evidence that appellant made false and disapproving remarks as to plaintiff's moral character in the presence of her husband, or that she threatened to disinherit him if he continued to live with appellee. Other wrongful acts or conduct of which appellant might have been guilty are not limited to the charges made in the complaint. The instruction constitutes reversible error.

Instruction No. 7 as originally written by appellee would have told the jury that if appellant had threatened appellee's husband with disinheritance and had offered and promised to reward him with money, and thereby caused him to leave appellee, the verdict should be for appellee. Such instruction however, before it was given, was changed by striking out the part thereof pertaining to disinheritance, and the reward to appellee of money, and inserting in lieu thereof that if appellant was guilty of some act or conduct with the intent or purpose of bringing about a separation of appellee's husband from her, and to alienate his affections the verdict should be for appellee. There was a clear failure to prove as to the threatened disinheritance, and as to any reward of money, which we assume

16    APPELLATE COURT OF INDIANA,

Massachusetts, etc., Ins. Co. v. State, ex rel.—76 Ind. App. 16.

occasioned the change of the instruction to the form in which it was given, to wit, that "if appellant was guilty of some act or conduct," etc. The act or conduct is not limited to any act or conduct charged in the complaint. The instruction was therefore erroneous, and should not have been given. *Citizens Street R. Co.* v. *Jolly* (1903), 161 Ind. 80, 91, 67 N. E. 935.

The judgment is reversed, with instructions to the trial court to grant a new trial.