STATE, EX REL. KAUTZ *v.* BOARD OF COMMISSIONERS
OF HOWARD COUNTY.

[No. 26,307.   Filed March 13, 1938.]

*Conrad Wolf, Earl B. Barnes, C. W. Roll* and *George B. Shenk,* for appellant.

*Donald F. Elliott, Lloyd McClure, Harry V. Forehand* and *Thomas M. Ryan,* for appellee.

FANSLER, J.—Appellant sued to enjoin appellee from building a new court house. There was a judgment for appellee.

The facts found specially are substantially as follows:

The Howard County court house was built in 1869 and used continuously for the usual purposes until January, 1928, when it was vacated and the county offices and court installed in other quarters not owned by the county.

In January, 1927, a number of citizens of Howard County appeared before the Board of County Commissioners and presented a petition and made speeches urging the building of a new court house. The commissioners asked the judge of the circuit court to appoint a committee and call conferences of taxpayers to discover "the will of the taxpayers as to the advisability of remodeling or the erection of a new house." After much public discussion and the procuring of estimates, the commissioners, on the last day of February, 1927, adopted the following resolution:

> "Be it resolved by the Board of Commissioners of Howard County that an emergency has arisen for a further appropriation other than that made at the last regular meeting of the County Council of Howard County, Indiana, for such purpose, and it is determined and adjudged by this Board of Commissioners that an estimate be prepared of all probable expenditures to be made by this Board of Commissioners for the purpose of constructing and equipping a new Court House for Howard County, Indiana, for the year ending December 31, 1927."

An estimate of $650,000.00 for the construction of a court house was filed with the county auditor. He gave notice of a special meeting of the County Council on March 10, 1927. Nothing in the record up to this time

discloses anything as to the condition of the old court house, and no reason for the emergency appears except the suggestion that the court house is inadequate for the county's needs.

Prior to the special meeting of the County Council certain citizens filed a request with the State Fire Marshal for an examination of the court house. An examination was made. The electric wiring was found to have been installed without conduits and carelessly strung, and that, perhaps, five per cent of the wiring was defective. The wood plates at the top of the walls near the roof and some supports were found to be dry-rotted although mostly they were sound. An open stairway leading to the tower was rickety and there was an accumulation of dust above the ceiling in the court-room. In a room on the same floor record books were strewn about without system or order. A wooden floor above the heating plant was in a scorched or charred condition, which condition had existed for several years and apparently had not become worse. The heating plant was old and in poor repair and at times failed to properly heat parts of the building. The roof of the building leaked and slates had been blown off, and parts of an ornamental fence upon the tower had fallen off.

As a result of this inspection the Fire Marshal made an order that the court house was especially liable to fire and so situated as to endanger other property, because of its age and dilapidated condition, and ordered that the use of the court house should be discontinued within ninety days and the building removed within one hundred and eighty days. The time for compliance with the order was afterwards extended at the request of the County Commissioners to February 1, 1928.

The County Council met on the day appointed. There was much discussion urging the appropriation and the necessity for a new court house, some of which was

described in the record as "impassioned and logical," although some citizens appeared and advised against undue haste. The County Council found of record that an emergency had arisen for an appropriation for a new court house, made the appropriation and ordered the issue of bonds for its construction.

On March 16, 1927, the commissioners met and passed a resolution to issue bonds for building and equipping a court house, and notice to taxpayers was ordered. Objection to the issuance was filed on the ground that no legal appropriation had been made and that the issue was unnecessary, unwise and excessive. The petition was certified to the State Board of Tax Commissioners, a hearing was held and a bond issue approved in the sum of $540,000.00. Thereafter the Board of Commissioners adopted plans and specifications and advertised the letting of the contract, and the contract was let on the 14th day of December, 1927.

The evidence as to the physical condition of the court house is fully covered in the summary of the findings of the State Fire Marshal. The court found that the physical condition of the court house, as thus summarized, existed prior to September, 1926, when the regular annual meeting of the County Council was held, and ever since, and that the condition was due to the age of the building, improper construction, neglect and the usual wear, tear, deterioration, and obsolescence; that the building had not suffered damage or injury by fire, flood, windstorm or other sudden event which might not have been foreseen by the exercise of due care and attention, and that neither the Board of County Commissioners nor the County Council took any action of any kind concerning the construction of a new court house during the year 1927.

The court further found as a fact that an emergency existed for the construction of a new court house, and

upon its findings stated its conclusions of law that the proceedings for the construction of a new court house were valid, and entered judgment against the plaintiff.

The errors assigned questioned the correctness of the court's conclusions of law upon the findings.

The County Commissioners had no power to contract for a new court house unless a valid appropriation therefor had previously been made by the County Council.

The County Council Act, §5882 Burns 1926, provides:

"If at any time after the adjournment of the regular annual meeting in September, an emergency should arise for further appropriation, for any purpose for which the Council is authorized to appropriate by this act, such further appropriation may be made at a special meeting of the council, on estimates prepared and presented as hereinabove provided, by an ordinance passed by at least a two-thirds of all the members of the council and not otherwise."

The appellee contends that the finding of the County Council of record, that an emergency existed, is conclusive in the absence of a showing of fraud and that, therefore, the appropriation and proceedings are valid. It will be noted that the section last quoted provides that if "an emergency should arise" the council is authorized to appropriate. In this respect the statute differs from §12068 Burns 1926, which provides that township advisory boards may "determine" whether an emergency exists.

It is contended by appellee that the statutes confer identical powers, and that the determination of the township advisory board as to the existence of an emergency has been held to be final. This contention cannot be sustained in any respect.

*Follett* v. *Sheldon, Treasurer* (1924), 195 Ind. 510, 144 N. E. 867, and *Wilkins et al.* v. *Newkirk, Trustee, et*

*al.* (1927), 85 Ind. App. 663, 155 N. E. 516, are cited by appellee as supporting its contention. The statute referred to in these cases is a special one in which the legislature provides that if a school building is destroyed under certain circumstances, the advisory board may declare an emergency. In other words, the legislature fixes the facts upon which the advisory board may find the emergency and, if the facts exist, the declaration of the emergency by the advisory board is, of course, conclusive.

The language quoted by appellee from *Van Der Veer* v. *State, ex rel. Herron et al.* (1933), 97 Ind. App. 1, 165 N. E. 265, 270, is dictum, since the question we have here was not before the court in that case. It will be noted, however, that the court merely said: "The board was required to find the jurisdictional fact that an indispensable public necessity existed . . .," and not that the finding of such fact was conclusive.

We have examined every authority cited by the appellee and find none supporting the contention that, under statutes which authorize the council or board "to determine" the question of emergency, their determination is conclusive, but we do find decisions of this court which take a contrary view.

In the case of *The Board of Commissioners of Tippecanoe County* v. *Mitchell* (1892), 131 Ind. 370, 30 N. E. 409, 410, 15 L. R. A. 520, the court had under consideration a statute which provided that:

"The Board of County Commissioners shall, unless in cases of indispensable public necessity, to be found and entered of record as part of its orders, make no allowance not specifically required by law to any county auditor, clerk, sheriff, assessor, or treasurer, either directly or indirectly."

Elliott, C. J., speaking for this court, said:

"But the powers of the board of county commissioners are statutory, and it has such powers only

as the statute expressly or impliedly confers. . . . It confines the power to make such contracts to cases where there is an 'indispensable public necessity.' Where there is no such necessity there is no power to contract with other county officers, but where there is such necessity the power exists. . . .

"The statute vesting in the board of commissioners the power to determine when an 'indispensable public necessity' exists was complied with in this instance. There was a decision adjudging that such a necessity did exist, and that decision was duly entered of record. It is probably true that the decision is not conclusive. It is, as we are inclined to believe, subject to review. But it cannot be reviewed unless it is attacked in the proper mode. *Nichols* v. *Howe,* 7 Ind. 506. There must be a pleading properly alleging facts showing that the finding of the existence of a public necessity was wrong."

In *Clark et al.* v. *State of Indiana, ex rel. Lee* (1918), 187 Ind. 276, 117 N. E. 965, 967, Harvey, J., speaking for the court, says:

"The board found it to be a fact that an indispensable public necessity existed for the making of this contract and entered its finding of this fact of record, and thereupon assumed the power and jurisdiction to enter into such a contract, and recited this fact in the contract. The plaintiff has not sought in any direct attack upon this action of the board to set it aside or have it declared void. The plaintiff cannot in this proceeding, which is entirely collateral, attack said order."

Under a statute which merely authorizes action in case "an emergency should arise," and which makes no provision for a determination of the fact of an emergency by the board, there is even less reason for concluding that their determination of the question is final.

In *Burr* v. *City and County of San Francisco* (1921), 186 Cal. 508, 199 Pac. 1034, 1036, 17 A. L. R. 581, the court said:

"At the outset it is to be noted that section 13 aforesaid does not authorize a tax exceeding the dollar limit whenever the board of supervisors shall by ordinance declare that a great necessity or emergency exists, but that it authorizes such increased tax only 'in case of any great necessity or emergency'; that is, when a great necessity or emergency does, in fact, then exist. The consequence is that the recital of facts in the ordinance to show such necessity or emergency is not conclusive of the truth of the recital or of the existence of such facts. This was expressly decided in *San Christina, etc., Co.* v. *San Francisco,* 167 Cal. 772, 141 Pac. 384, 52 L. R. A. (N. S.) 676. It must follow, also, that the conclusion or declaration of the board that the great necessity or emergency did exist because of the facts recited is not conclusive. Both the existence of the recited facts and the conclusion drawn therefrom may be disputed by the taxpayer and, on review by the courts, held to be nonexistent, or unwarrantable, respectively." *Safford* v. *City of Lowell* (1926), 255 Mass. 220, 151 N. E. 111, 113, Mar. 2, 1926; *Merrill* v. *Lowell* (1920), 236 Mass. 463, 128 N. E. 862.

The trial court appears to have adopted and tried the case upon this theory since the special findings show a consideration of evidence and findings of fact which were entirely unnecessary upon any other theory. This brings us to the question of whether or not an emergency actually existed or was shown to exist.

Webster defines an emergency: "1. Act of emerging; sudden or unexpected appearance or occurrence." "2. An unforseen occurrence or emergency which calls for immediate action or remedy; pressing necessity; exigency."

"Only in a case of emergency, *arising after the close of the regular annual meeting of the county council,* can further appropriations be made at a special meeting of such council." (Our italics.) *State, ex rel. Johnston* v. *Wayne County Council* (1901), 157 Ind. 356, 61 N. E. 715, 716.

In discussing an attempted appropriation under a similar statute the Supreme Court of Massachusetts said:

"Without attempting an exact or all inclusive definition, it is manifest that that language does not apply to a condition which clearly may be foreseen in abundant time to take remedial action before serious damage to the health or to the safety of person or property is likely to occur. Without doubt, lack of foresight and failure to take proper precaution to meet contingencies which any prudent person would anticipate might occasion a condition which would jeopardize public health and safety, and to which the words of the statute would be applicable. It would be remarkable, however, if the legislators used them to describe such a situation. It is not to be supposed that they intended to make it possible for municipal officers to avoid advertising for bids for public work by merely delaying to take action to meet conditions which they can foresee until danger to public health and safety has become so great that the slight further delay caused by advertising will entail public calamity." *Safford* v. *City of Lowell, supra.*

The reasoning applies to the statute now under consideration. It is clear from the express finding of the court that the condition which is said to give rise to the emergency existed for months, if not years, prior to the last previous regular meeting of the County Council in 1927. It is true that the State Fire Marshal made an order that the court house should be torn down. We are led to suspect, however, from the facts upon which the order was based, that the Board of County Commissioners had no desire to resist the order, and that the investigation by the State Fire Marshal was inspired by the same zeal for a new court house which prompted the initiation of the whole matter.

All of the evidence and the findings are directed to the question of whether there was an emergency for

tearing down the old court house. No consideration seems to have been given to the question of whether there was an emergency for the building of a new court house, and there is no evidence upon that subject unless the evidence that the court and county offices were housed in other buildings, the temporary adequacy of which we may assume, can be treated as evidence that there was not such an emergency for the construction of a new building as would necessitate an abandonment of the regular statutory method of procedure.

Neither the evidence nor the special findings show such an emergency as is contemplated by the statute. In view of our conclusion it is unnecessary to discuss the other questions presented.

The judgment is reversed, with instructions to restate the conclusions of law in conformity with this opinion, and enter judgment thereon for the plaintiff.

Roll, J., not participating.